16 P.3d 563 (2001)
142 Wash.2d 608
In re the Personal Restraint Petition of Douglas Earl MEYER, Petitioner.
In re the Personal Restraint Petition of Eric L. Erickson, Petitioner.
In re the Personal Restraint Petition of Bradley T. Sundstrom, Petitioner.
Nos. 68271-2; 68482-1; 68810-9.
Supreme Court of Washington, En Banc.
Argued June 22, 2000.
Decided January 4, 2001.
Reconsideration Denied March 26, 2001.
*564 Patricia Arthur, Seattle, Pattie Mhoon, Tacoma, David Fathi, Washington, DC, for Petitioners.
Eric Erickson, Everett, pro se.
Douglas E. Meyer, Jerome, ID, pro se.
Christine Gregoire, Atty. Gen., John Samson, John S. Blonien, Assistant Attorneys General, Olympia, for Respondent.
TALMADGE, J.
We are asked in these three consolidated cases to decide if the risk classification of certain sex offenders by the Department of Corrections (Department) and local law enforcement authorities pursuant to RCW 4.24.550 and RCW 72.09.345,[1] violates the due process rights of those sex offenders when the consequences of such risk classification provide for the release of information about those offenders to the public. We hold no liberty interest arises from the United States or Washington State Constitutions. Nor does a liberty issue arise from compliance with the risk level classification of RCW 4.24.550 and RCW 72.09.345 insofar as the statute is essentially procedural and does not implicate the offenders' protected privacy rights. We affirm the Court of Appeals' decisions in each of these three cases.

ISSUES
1. Do the risk classification and community notification procedures of the 1990 community protection act relating to sex offenders violate petitioners' rights to due process of law?
2. What process is due these sex offenders?
3. Should the Court stay the enforcement of any community notification regarding these sex offenders?

FACTS
Petitioners Meyer, Erickson, and Sundstrom are convicted sex offenders still in the Department's custody. On November 24, 1992, Douglas Meyer was convicted of second-degree rape in the Grant County Superior Court pursuant to RCW 9A.44.050(1)(a); the trial court subsequently sentenced him to 72 months' imprisonment. In anticipation of his release, the Department's End of Sentence Review Committee (ESRC) classified Meyer as a Level I sex offender. On June 8, 1999, Meyer filed a personal restraint petition (PRP) in the Court of Appeals, Division Three, challenging this classification. He claimed the sex offender registration and community notification procedures of the 1990 act violated his right to procedural due process in several respects. He also asserted entitlement to an immediate hearing in which the State would bear the burden of proving by clear and convincing evidence he was likely to reoffend or posed a threat to the community. Unconvinced, the Court of Appeals dismissed Meyer's petition as time barred and meritless. In re PRP of Meyer, No. 184960-III (Wash.Ct.App. Jun. 11, 1999).
On June 18, 1993, Eric Erickson pleaded guilty to two counts of first-degree child molestation in the Snohomish County Superior Court pursuant to RCW 9A.44.083; the trial court subsequently sentenced him to 89 months' imprisonment. In anticipation of his *565 release, the ESRC classified Erickson as a Level III sex offender. On January 21, 1999, Erickson filed a PRP in the Court of Appeals, Division One. Erickson argued the State had deprived him of a liberty interest without due process of law in violation of both the United States and Washington Constitutions. The Court of Appeals dismissed Erickson's petition, reasoning registration and community notification do not create an affirmative restraint. In re PRP of Erickson, No. 44100-1-I (Wash.Ct.App. Aug. 16, 1999).
On September 4, 1997, Bradley Sundstrom pleaded guilty to second-degree child molestation pursuant to RCW 9A.44.086; the trial court sentenced him to 41 months' imprisonment. In anticipation of Sundstrom's release, the ESRC classified him as a Level III sex offender. On July 9, 1999, Sundstrom filed a PRP with us, which we subsequently transferred to the Court of Appeals, Division Two, pursuant to RAP 16.3(c) and 16.5(b). Sundstrom, like the other petitioners, claimed the registration and community notification procedures violated his right to procedural due process. The Court of Appeals dismissed Sundstrom's PRP, finding "Sundstrom is not challenging a `restraint,' as is required for relief to be available via personal restraint petition." In re PRP of Sundstrom, No. 25267-8-II, slip op. at 2 (Wash. Ct.App. Nov. 17, 1999).
All three petitioners sought discretionary review, which we granted. We consolidated the petitions for the purpose of this proceeding.

ANALYSIS
To understand the issues in this case, it is first necessary to understand generally how the registration and community notification procedures of the 1990 community protection act function. The registration provision, RCW 4.24.550, requires any person who has been found guilty of, pleaded guilty to, or found not guilty by reason of insanity of any sex offense, as defined by RCW 9.94A.030(37), to provide his name, address, date and place of birth, place of employment, crime for which convicted, date and place of conviction, aliases used, and Social Security number to the sheriff in the county where the person resides or plans to reside. RCW 9A.44.130. The sheriff must also obtain a photograph of the individual and a copy of the individual's fingerprints. RCW 9A.44.130(8).
The community notification provision, RCW 4.24.550(1), permits local law enforcement agencies to disclose some or all of the above-discussed registration information "when the agency determines that disclosure of the information is relevant and necessary to protect the public and counteract the danger created by the particular offender." Id. The Department's ESRC initially assesses the danger posed to the community by the particular offender before release from confinement or the beginning of community custody or community placement. RCW 72.09.345(4). The ESRC classifies offenders as Level I for low risk of reoffense; Level II for moderate risk; and Level III for high risk. To support this classification, the ESRC has "access to all relevant records and information in the possession of public agencies relating to the offenders under review." RCW 72.09.345(3). Then, the ESRC notifies the sheriff or other local law enforcement agency in the offender's community of the recommended classification.
Local law enforcement agencies make the final determination of the risk level classification, after reviewing the ESRC's recommendation. RCW 4.24.550(4)(b). The risk the offender poses determines the extent of community notification. Local law enforcement agencies can release information only to the extent such information is rationally related to the offender's location, the "level of risk posed by the offender to the community," and "the needs of the affected community members for information." RCW 4.24.550(2). For persons classified at Level I, local law enforcement agencies may, upon request, disclose relevant, accurate, and necessary information to any victim or witness, or any individual community member who lives near where the offender resides, will reside, or is regularly found. RCW 4.24.550(3)(a). For Level II offenders, law enforcement agencies may also disclose such information to schools, child care centers, *566 day care providers, and neighbors and community groups near where the offender resides, expects to reside, or is regularly found. RCW 4.24.550(3)(b). And for Level III offenders, the information may be disclosed to the public at large. RCW 4.24.550(3)(c).
The statute makes no provisions for notice to the offender or a hearing before the ESRC or local law enforcement agency before the community is notified.[2]
We rejected various constitutional challenges to the 1990 act's registration and notification statutes in State v. Ward, 123 Wash.2d 488, 869 P.2d 1062 (1994). With respect to the notification, we held the limited disclosure of registration information to the public does not amount to a "badge of infamy" and is not additional punishment for the offense. Id. at 500-02, 869 P.2d 1062. We did not address the due process issue petitioners now raise. The petitioners here essentially contend the risk classification of RCW 4.24.550 and RCW 72.09.345 infringes on a liberty interest they enjoy and that they have been deprived of that interest without due process of law under both the state and federal constitutions.
I. Procedural Issues
As a threshold matter, the State contends the one-year statute of limitations found in RCW 10.73.090 bars all three petitions. Moreover, the State asserts the petitions do not qualify under the provisions of RAP 16.4(b) because the offenders are not under a "restraint." The State has telling arguments on these points. We note all of the petitions were filed more than a year after the entry of the judgment and sentence. Thus, none of the exceptions enumerated in RCW 10.73.100 applies.
Moreover, our decision in Ward implies no restraint is created by these statutes. Ward, 123 Wash.2d at 500-02, 869 P.2d 1062. Additionally, the Court of Appeals for the Ninth Circuit has held a sex offender who has completed his sentence and is subject to Washington's registration requirement is not "in custody" for purposes of the federal habeas corpus statute. Williamson v. Gregoire, 151 F.3d 1180 (9th Cir.1998). State law does not require the petitioner to be "in custody." However, the petitioner must show he is under an unlawful "restraint," which includes any "disability resulting from a judgment or sentence in a criminal case." RAP 16.4(b).
But despite these procedural arguments, in the interests of clarifying the law in this important area, we nevertheless choose to address and resolve the constitutional issues posed by the petitioners in light of the substantial public import of these issues. In Matter of Personal Restraint Petition of Myers, 105 Wash.2d 257, 261, 714 P.2d 303 (1986) (holding a personal restraint petition is also available to challenge unlawful state action, even if moot at the time of review, "`when it can be said that matters of continuing and substantial public interest are involved.' ") (quoting Sorenson v. City of Bellingham, 80 Wash.2d 547, 558, 496 P.2d 512 (1972)). We now turn to the merits of the petitioners' cases.
II. Due Process
Petitioners argue a convicted sex offender is constitutionally entitled to notice and a hearing before his risk level classification is finally determined under RCW 4.24.550 and before any information about him is disseminated. The State contends the dissemination of offender information does not deprive the offender of a protected liberty interest.
The Fourteenth Amendment to the United States Constitution prohibits the governmental deprivation of "life, liberty, or property, without due process of law." U.S. CONST. Amend. 14, § 1. The threshold question we face here is whether the petitioners have been deprived of a protected liberty interest. In Matter of Personal Restraint Petition of Cashaw, 123 Wash.2d 138, 143, 866 P.2d 8 (1994). The analysis is the same under the Fourteenth Amendment or article I, section 3 of the Washington Constitution. See O'Hartigan v. Department of Personnel, 118 *567 Wash.2d 111, 117-18, 821 P.2d 44 (1991); Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 104, 937 P.2d 154 (1997) (holding the Washington Constitution provides no more protection than the United States Constitution in the context of the interest in confidentiality, or the nondisclosure of personal information). The petitioners discern the initial existence of a protected liberty interest from the mandatory requirements of the community notification statute as we have interpreted it in State v. Ward, 123 Wash.2d 488, 869 P.2d 1062 (1994), the privacy interest protected by article I, section 7 of the Washington Constitution, or their interest in avoiding additional incarceration.
A. Community Protection Act
Liberty interests worthy of protection can arise from state laws. Cashaw, 123 Wash.2d at 144, 866 P.2d 8. But such a liberty interest is narrowly circumscribed. In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court wrote "the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause." Id. at 483, 115 S.Ct. 2293. In Sandin, the Court wanted statutory due process liberty interests to "be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484, 115 S.Ct. 2293. Thus, Sandin precludes prisoners from claiming a statutory or regulatory due process liberty interest with respect to a variety of relatively minor matters in the institutional setting.[3]
United States Supreme Court cases discerning the existence of a protected liberty interest are generally restricted to the prisoners' rights context. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prisoners' rights to good time credits); Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (prisoners' interest in preventing transfer to prison in another state); Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (state law may create enforceable liberty interests in the prison setting); Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (prisoners' interest in parole); Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (prisoners' interest in good time credits); Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (prisoners' interest in avoiding extra punishment in prison). No petitioner has cited a decision applying this statutory liberty interest analysis outside the context of a prisoner's regulatory right to sentence reduction. Washington law is consistent with this narrow view of a liberty interest. See, e.g., In Matter of Personal Restraint of Derek E. Gronquist, 138 Wash.2d 388, 397, 978 P.2d 1083 (1999) (prisoners' interest in good time credits); Cashaw, 123 Wash.2d at 144, 866 P.2d 8 (prisoners' interest in parole); Matter of the Personal Restraint Petition of Powell, 117 Wash.2d 175, 203, 814 P.2d 635 (1991) (prisoners' interest in the setting of a minimum sentence); In Personal Restraint Petitions of Johnston, 109 Wash.2d 493, 497, 745 P.2d 864 (1987) (prisoners' right to good time credits); In the Personal Restraint Petition *568 of Ayers, 105 Wash.2d 161, 164, 713 P.2d 88 (1986) (prisoners' interest in "the potential of parole"); In re Piercy, 101 Wash.2d 490, 495, 681 P.2d 223 (1984) (prisoners' interest in good time credits); In the Matter of the Personal Restraint Petition of Dennis Sinka, 92 Wash.2d 555, 565, 599 P.2d 1275 (1979) (prisoners' liberty interest in the setting of minimum terms).
The seminal Washington case discussing a liberty interest arising from state statutes is Cashaw. There, we said of such a liberty interest:
For a state law to create a liberty interest, it must contain "substantive predicates" to the exercise of discretion and "specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow". Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989); Swenson v. Trickey, 995 F.2d 132, 134 (8th Cir.), cert. denied, [510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 468] (1993). Thus, laws that dictate particular decisions given particular facts can create liberty interests, but laws granting a significant degree of discretion cannot.
Cashaw, 123 Wash.2d at 144, 866 P.2d 8.
The petitioners argue RCW 72.09.345 and RCW 4.24.550, when read as construed in Ward, "contain[ ] substantive restrictions on official discretion." Opening Br. at 13. The ESRC can classify as Level III only those offenders "whose risk assessments indicate a high risk of reoffense within the community." RCW 72.09.345(5). Although the local law enforcement agency is free to ignore this assessment and classify an offender higher or lower than the ESRC, RCW 4.24.550 puts what can be interpreted as substantive limits on the agency's discretion by requiring the scope of any public disclosure of "relevant and necessary information... [to] be rationally related" to the level of risk, the offender's geographic location, and the needs of the community. RCW 4.24.550(2) (emphasis added).
The Court of Appeals for the Ninth Circuit recently dealt with that question and concluded, "[t]he collection and dissemination of information under the Washington law does not violate any protected privacy interest, and does not amount to a deprivation of liberty or property" without due process. Russell v. Gregoire, 124 F.3d 1079, 1094 (9th Cir.1997), cert. denied, 523 U.S. 1007, 118 S.Ct. 1191, 140 L.Ed.2d 321 (1998). The Court of Appeals for the Sixth Circuit recently rejected a due process challenge to a single-tier notification scheme. Cutshall v. Sundquist, 193 F.3d 466 (6th Cir.1999) (finding no liberty or property interest at stake in the release of information about the offender's identity and criminal conduct).
In the final analysis, however, we disagree with the petitioners' view that the registration and disclosure statutes create substantive interests. In Ward, we determined these statutes were not punitive and did not create either an affirmative disability or restraint on sex offenders. See also Doe v. Pataki, 120 F.3d 1263 (2d Cir.1997). In fact, in Cashaw, we declined to find a liberty interest for prisoners subject to parolability hearings by the Board of Prison Terms and Paroles when the Board allegedly failed to follow its own procedures. We found no liberty interest could arise from procedural laws. Parolability involved subjective appraisals with the Board assessing a myriad of imponderables. The risk level classifications here are not significantly different. The sex offender registration and disclosure statutes are essentially procedural statutes; no liberty interest arises from them.
B. Right to Privacy
The petitioners claim a liberty interest, under article I, section 7 of the Washington Constitution, in the information subject to disclosure because that constitutional provision affords significantly greater privacy protection than the United States Constitution. The petitioners misconstrue our case law. In examining just such a contention, we held the Washington Constitution provides no more protection than the federal constitution in the context of the interest in confidentiality, or the nondisclosure of personal information. Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 124, 937 P.2d 154 (1997). In that case, we even performed a Gunwall analysis *569 and found no more protection under article I, section 7 of the Washington Constitution than under the Fourteenth Amendment. State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Thus, the right of privacy guaranteed by the Washington Constitution in this setting has the same boundaries as that guaranteed by the federal constitution. Ino Ino, 132 Wash.2d at 124, 937 P.2d 154.
Persons have a limited right of confidentiality in the nondisclosure of criminal information, id. at 124, 937 P.2d 154; O'Hartigan v. Department of Personnel, 118 Wash.2d 111, 821 P.2d 44 (1991), but such a right of confidentiality in the context of convicted sex offenders is essentially one of avoiding stigma or protecting reputation. But reputational interest does not give rise to a liberty interest. In Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the United States Supreme Court found an individual had no right to due process before police officers posted his picture with an identification as an "Active Shoplifter" in various retail establishments. That individual filed a 42 U.S.C. § 1983 action, alleging his procedural due process rights were violated and claiming a protected interest in reputation and future employment opportunities. Paul, 424 U.S. at 701, 96 S.Ct. 1155. Justice Rehnquist examined a long line of decisions in which the Court had protected an interest in reputation, and then wrote an interest in reputation is "neither `liberty' nor `property' guaranteed against state deprivation without due process of law." Id. at 712, 96 S.Ct. 1155. The Court reasoned the government's conduct to be actionable, must not only affect the individual's reputation, but must be accompanied by some other injury. Paul, 424 U.S. at 708-10, 96 S.Ct. 1155. The Court ruled "reputation alone, apart from some more tangible interests" is not deserving of protection. Id. at 701, 96 S.Ct. 1155. This holding has come to be known as the "stigma-plus" requirement.
The statutes at issue here do not meet the Paul "stigma-plus" requirements. The information disclosed to the public is largely, if not entirely, available from public sources like the court files on these individuals as well as their correctional release plans. The information disclosed is not subject to any specific confidentiality protection. See RCW 10.97.010; RCW 4.24.550(7). Conviction records may be released without restriction. RCW 10.97.050(1); Ward, 123 Wash.2d at 502, 869 P.2d 1062.
Moreover, the public interest in information about potentially dangerous individuals in local neighborhoods is legitimate. This Court, the federal courts, and the Legislature all have recognized the validity of Washington's sex offender registration laws and the important role registration and community notification play in the protection of the public. For example, in 1990 the Legislature added a new section to the act, which states:

NEW SECTION. Sec. 116. The legislature finds that sex offenders pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is a paramount governmental interest. The legislature further finds that the penal and mental health components of our justice system are largely hidden from public view and that lack of information from either may result in failure of both systems to meet this paramount concern of public safety. Overly restrictive confidentiality and liability laws governing the release of information about sexual predators have reduced willingness to release information that could be appropriately released under the public disclosure laws, and have increased risks to public safety. Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government. Release of information about sexual predators to public agencies and under limited circumstances, the general public, will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals.
Therefore, this state's policy as expressed in section 117 of this act is to require the exchange of relevant information *570 about sexual predators among public agencies and officials and to authorize the release of necessary and relevant information about sexual predators to members of the general public.
Laws of 1990, ch. 3, § 116. See also Laws of 1990, ch. 3, §§ 117, 401, 402; Laws of 1991, ch. 274, § 1; State v. Ward, 123 Wash.2d 488, 869 P.2d 1062. Preventing law enforcement agencies from issuing appropriate community notification would adversely affect an agency's ability to assist parents in avoiding the potential for harm to their children.
While we recognize there are authorities to the contrary, see Doe v. Attorney General, 426 Mass. 136, 686 N.E.2d 1007 (1997); Noble v. Board of Parole and Post-Prison Supervision, 327 Or. 485, 964 P.2d 990 (1998); Doe v. Poritz, 142 N.J. 1, 662 A.2d 367, 36 A.L.R.5th 711 (1995); Commonwealth v. Williams, 557 Pa. 285, 733 A.2d 593, 78 A.L.R.5th 731 (1999); E.B. v. Verniero, 119 F.3d 1077, 1105 (3d Cir.1997), we do not believe the statutes here satisfy the stigma-plus formulation announced in Paul.
C. Avoiding Additional Incarceration
Finally, the petitioners claim they are being held beyond their minimum release date because of their designations as sex offenders. Sundstrom and Erickson both claim their respective classifications as Level III sex offenders preclude their release into community custody, so they are being imprisoned beyond their release date. The State contends the petitioners' release plans "have been denied because the proposed address would violate the terms of the sentence or would place the Petitioner[s] in close proximity to potential victims." Resp't's Supplemental Br. at 19.
Meyer apparently agrees. According to his reply brief, Meyer is "being held past his early release date because the proposed residences submitted by him have not been accepted by the Department of Corrections." Reply Br. at 1. Yet, Meyer does not argue the process by which the Department evaluates proposed early-release residences violates his right to procedural due process. Thus, Meyer's claim is without merit.
Sundstrom, Erickson, and the State have submitted affidavits in support of their respective positions. Sundstrom's mother has apparently contacted several possible release facilities, all of whom refused to accept Sundstrom because he is a "Level III" sex offender. Decl. of Becky Sundstrom, App. 9 to Petr'r Sundstrom's Mot. for Discretionary Review. Erickson, too, has faced some difficulty in finding a release address because of his classification as a Level III sex offender. At least one possible release facility has a "policy to only admit sex offenders who have been given a level one rating." Pet'r's Second Mot. to Supplement the R.
None of the Petitioners submitted any affidavits establishing a Level III classification prevents a housing provider from voluntarily agreeing to accept them. They also did not cite any authority to the effect the decisions of private housing providers constitutes sufficient state action establishing a deprivation of to due process.
The State, however, submitted affidavits executed by several Community Corrections Officers (CCO) who claim the petitioners' community placement plans were denied because they were contrary to the judgment and sentence of each respective petitioner. For example, Erickson's judgment and sentence specifically prohibits contact with minors. Consequently, Erickson's CCO avers that "[a]lthough, Mr. Erickson is a Level III offender, my decision to deny this plan was not based on his risk level classification." Aff. of Skip Butler, Resp't's Mot. to Supplement the R. In the final analysis, no petitioner has established his incarceration has been prolonged because of his classification. Thus, the asserted liberty interest has not been established on this record.

CONCLUSION[4]
The petitioners have not established a liberty interest arising out of the provisions of RCW 4.24.550 or RCW 72.09.345, requiring the registration and classification of sex offenders upon their release from confinement, *571 with implications for possible disclosure of information about them. In the absence of such a liberty interest, no due process rights attach to the classification of the risk such individuals present on their release from confinement.
Notwithstanding our decision today on the petitioners' constitutional claims, we express a certain discomfort with the seeming unfairness of a process of classification in which the offenders have little involvement. We note such offenders are not without avenues of relief if the Department's classification recommendation or the local law enforcement agency decision is arbitrary or capricious. These individuals may secure judicial review by writ of certiorari for arbitrary or capricious classification. RCW 7.16.040; CONST. art. IV, § 4, § 6. Additionally, the Department may be wise to afford these individuals notice and an opportunity to be heard as to the ESRC decision to avoid the potential for erroneous decision-making.
We affirm the decisions of the Court of Appeals in these cases dismissing petitioners' PRPs.
GUY, C.J., SMITH, MADSEN, IRELAND, and BRIDGE, JJ., concur.
ALEXANDER, J. (dissenting).
As the majority has observed, convicted sex offenders are required, upon release from prison, to register with the sheriff in the county where the released offender intends to reside.[1] RCW 9A.44.130(1). In addition, "public agencies" are permitted to disclose to the public "relevant and necessary" information about a sex offender. RCW 4.24.550(1). The degree to which information is disclosed varies and is to be "rationally related" to the "level of risk" the released person is deemed to pose to the community. RCW 4.24.550(2). Although the initial determination of the degree of risk is made by the End of Sentence Review Committee (ESRC) of the Department of Corrections, the offender's risk level is ultimately determined by "local law enforcement." RCW 4.24.550(4)(b).[2] Offenders are not, however, afforded notice of when or where the decision that bears on community notification will be made. Neither are they provided a hearing at which they can challenge the determination of their final risk classification and/or the degree of community notification.
In State v. Ward, 123 Wash.2d 488, 869 P.2d 1062 (1994), we upheld the registration requirement for sex offenders against a variety of challenges, including a claim that the requirement to register violated the due process rights of offenders. The petitioners here do not reassert a challenge to the registration requirement nor do they assail the statutory provision requiring community notification. Their personal restraint petitions are limited to presenting a question that we did not address in Ward, i.e., whether offenders have a due process right to notice and a hearing before their risk level is determined and information about them is disseminated to the public.
As the majority observes, the parties who bring their personal restraint petitions to us are all convicted sex offenders whose risk levels have been determined by the ESRC. Petitioner Douglas Meyer was classified as a risk Level I sex offender (low risk), while petitioners Eric Erickson and Bradley Sundstrom were classified as Level III sex offenders (high risk). At the time they filed their petitions, the appropriate local law enforcement agency had not made a final determination of the risk level of any of the petitioners.
The petitioners claim that the classification scheme is unconstitutional because it fails to provide them with notice and an opportunity to be heard before their risk level classification is determined and personal information about them is disclosed to the community. The majority rejects this claim.
*572 More specifically, the petitioners contend that the public dissemination of private information about them, absent provision of notice and an opportunity to be heard on the question of what degree of risk they pose to the community, infringes on their protected liberty interests. This interest, they suggest, is protected by the Fourteenth Amendment of the United States Constitution which prohibits states from depriving persons of "life, liberty, or property, without due process of law" as well as the similarly worded article I, section 3, of the Washington Constitution.[3]
The petitioners assert that their right to "liberty" arises from three sources: (a) the mandatory requirements of the community notification statute; (b) their right to privacy or, more specifically, the right not to be wrongfully stigmatized and labeled as dangerous; and (c) their interest in avoiding further incarceration. I devote my attention entirely to their second claim.
This court has identified two types of interests protected by the right to privacy: the right to autonomous decision making and the right to nondisclosure of intimate personal information, or confidentiality. O'Hartigan v. Dep't of Personnel, 118 Wash.2d 111, 821 P.2d 44 (1991). The petitioners, while conceding that convicted sex offenders do not have a protected interest in confidentiality of public records and criminal history, assert that the disclosure of certain identifying information in conjunction with a public "branding of dangerousness" implicates constitutionally protected privacy interests. Opening Br. in Supp. of Pers. Restraint Pets. of Erickson & Sundstrom at 19. Petitioners essentially argue that their interest in avoiding wrongful stigmatization and in protecting their reputation is sufficient to require the state to afford them due process in the form of notice and a hearing before information about them, beyond that which is contained in public records, is disclosed to the public.
In my view, the petitioners' arguments are entirely consistent with the United States Supreme Court's decision in Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). There, the Court reviewed a statute that permitted local governments to post notices in stores in order to identify persons who had been prohibited from purchasing liquor. Id. at 434, 91 S.Ct. 507. The statute did not provide for a hearing before the notices were posted. In striking down the statute, the Court said, "Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Id. at 437, 91 S.Ct. 507. The Court went on to state, "Only when the whole proceedings leading to the pinning of an unsavory label on a person are aired can oppressive results be prevented." Id.
The majority stresses a later case, Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). There the Supreme Court held that an individual had no right to due process before police officers posted the individual's picture in various retail outlets with an indication that the person pictured was an "active shoplifter." Id. at 712, 96 S.Ct. 1155. It said that one's interest in reputation is "neither `liberty' nor `property' "guaranteed against state deprivation without due process of law. Id. Thus, it concluded that reputation "alone," apart from some tangible interest, is not deserving of protection. Id. at 701, 96 S.Ct. 1155. This case has led courts to engage in the so-called "stigma-plus" test in assessing such cases.
The majority also cites Russell v. Gregoire, 124 F.3d 1079 (9th Cir.1997), wherein the United States Ninth Circuit Court of Appeals looked at Washington's community protection act and rejected due process claims by offenders, holding that the act "does not violate any protected privacy interest, and does not amount to a deprivation of liberty or property." Id. at 1094. While that decision is not binding on this court, a decision from the *573 Ninth Circuit should always be afforded significant consideration. Even after viewing that decision with appropriate deference, I am left with the opinion that the decision is flawed in that the court's decision is based largely on a conclusion that "[t]he information collected and disseminated by the Washington statute is already fully available to the public...." Id. This conclusion overlooks the fact that under the statutes in question public agencies have extremely broad discretion to release to the community all "relevant and necessary information" regarding a sex offender when "necessary for public protection." RCW 4.24.550. In a practical sense, there does not appear to be any limit on the discretion of public agencies as to what information should be disseminated to the public.[4] In that regard, I agree with the observations of Judge Dwyer of the United States District Court for Western District of Washington who noted in another case that this statute permits "all information provided by the registrant (including his address and place of employment)" to be publicized and permits agencies to "disseminate not just the offender's record of charges and convictions, but also a narrative description of alleged crimes with which he was never charged." Doe v. Gregoire, 960 F.Supp. 1478, 1481-82 (W.D.Wash.1997).
There is considerable authority from other jurisdictions that community notification statutes, like those before us here, implicate a privacy or liberty interest.[5] The case that bears the most similarities to the instant case is Doe v. Poritz, 142 N.J. 1, 662 A.2d 367, 421 (1995), a decision of the Supreme Court of New Jersey. Like Washington, New Jersey's community notification law[6] provided for notification to the public based on three levels of risk to offend: low, moderate, and high. Doe, 662 A.2d at 378. The New Jersey statute was comparable to Washington's in that risk levels of offenders were determined without the benefit of prior notice to the offender or the provision of any hearing. The New Jersey court, relying on the United States Constitution as well as a provision of the New Jersey Constitution, determined that the statute impinged on the offenders' "liberty interests" sufficient to trigger due process protections. Id. at 420. It concluded, therefore, that an offender could obtain judicial review of a determination of level two or three classification, if the offender objected to such a classification prior to notification. Id. at 421.
The highest court of our neighboring state of Oregon has similarly held that the parole board of that state cannot publicly brand someone as a "predatory sex offender" without first affording the person notice and a hearing. Noble v. Bd. of Parole & Post-Prison Supervision, 327 Or. 485, 964 P.2d 990 (1998). In a well-reasoned opinion authored by Justice Gillette, the court said:
When a government agency focuses its machinery on the task of determining whether a person should be labeled publicly as having a certain undesirable characteristic or belonging to a certain undesirable group, and that agency must by law gather and synthesize evidence outside the public record in making that determination, *574 the interest of the person to be labeled goes beyond mere reputation. The interest cannot be captured in a single word or phrase. It is an interest in knowing when the government is moving against you and why it has singled you out for special attention. It is an interest in avoiding the secret machinations of a Star Chamber. Finally, and perhaps most importantly, it is an interest in avoiding the social ostracism, loss of employment opportunities, and significant likelihood of verbal and, perhaps, even physical harassment likely to follow from designation. In our view, that interest, when combined with the obvious reputational interest that is at stake, qualifies as a "liberty" interest within the meaning of the Due Process Clause.
Noble, 964 P.2d at 996-97.
I find myself in agreement with the reasoning of the Oregon and New Jersey courts and conclude, as did they, that the petitioners have a significant liberty interest in not having their reputation wrongly stigmatized by the government. I reach this conclusion because it is readily apparent to me that the degree to which information is released to the public about these offenders can have significant effect on their lives. As the Oregon court observed, ostracism, loss of employment, and verbal and/or physical harassment damages more than one's reputation and constitutes significant intrusions of one's liberty. Noble, 964 P.2d at 996. If the intrusion is the result of an incorrect branding of one's reputation, this is not a trifling matter, but rather, is an injustice. In sum, I concur with the reasoning of the Oregon and New Jersey courts and would hold that before decisions are finally made as to the degree of public notification concerning the risk, if any, these offenders pose to the public, they should be provided with notice and an opportunity to be heard.
Although the majority acknowledges a feeling of "discomfort" with the "seeming unfairness" of the process that these offenders assail, it nevertheless sweeps its concerns aside indicating that the offenders have the remedy of seeking judicial review by writ of certiorari for an arbitrary or capricious classification. Majority op. at 571. This, in my view, is a hollow remedy since it would be after the fact and would be equivalent to "closing the barn door after the horse has been let out." In view of the considerable interest petitioners have in making certain that they are not disadvantaged economically or physically by an unjustifiable sullying of their reputation, offenders should not have their risk level finally determined and information about them disseminated before they are afforded notice and hearing in order to assure that the information that is released to the community is not greater than what is "relevant and necessary" for the protection of the public. I would so hold. Because the majority concludes otherwise, I respectfully dissent.
JOHNSON and SANDERS, JJ., concur.
NOTES
[1] Both of these statutes are part of the 1990 community protection act, Laws of 1990, ch. 3.
[2] An offender may get his risk classification changed by petitioning the superior court of conviction to relieve him of the duty to register. RCW 9A.44.140(3)-(4). After serving at least "ten consecutive years in the community," an offender may also petition the superior court for relief from the duty to register.
[3] See, e.g., Klos v. Haskell, 48 F.3d 81, 82 (2d Cir.1995) (claiming liberty interest in right to participate in "shock program"a type of boot camp for inmates); Segal v. Biller, 39 F.3d 1188 (9th Cir.1994) (claiming liberty interest in a waiver of the travel limit imposed on prison furloughs); Burgin v. Nix, 899 F.2d 733, 735 (8th Cir.1990) (claiming liberty interest in receiving a tray lunch rather than a sack lunch); Spruytte v. Walters, 753 F.2d 498, 506-08 (6th Cir.1985) (finding liberty interest in receiving a paperback dictionary due to a rule that states a prisoner "`may receive any book ... which does not present a threat to the order or security of the institution'" (quoting Administrative Rule 791.6603)); Lyon v. Farrier, 727 F.2d 766, 768-69 (8th Cir.1984) (claiming liberty interest in freedom from transfer to a smaller cell without electrical outlets for televisions and liberty interest in a prison job); United States v. Michigan, 680 F.Supp. 270, 277 (W.D.Mich.1988) (finding liberty interest in not being placed on "food loaf" diet).
[4] In light of our disposition of this case, we deny petitioners' motions for stay.
[1] Offenders must provide the following information when registering: name, address, date and place of birth, place of employment, crime for which they were convicted, date and place of conviction, aliases used, social security number, photograph, and fingerprints. RCW 9A.44.130(3).
[2] An adult offender may petition the superior court to be relieved of the duty to register, but only after he or she has spent 10 consecutive years in the community without being convicted of any new offense. RCW 9A.44.140(3).
[3] Article I, section 3, of the Washington Constitution states "No person shall be deprived of life, liberty, or property, without due process of law." I agree with the majority that Washington's Constitution does not afford greater privacy protection than does the Fourteenth Amendment to the United State's Constitution and that the analysis under either is the same. See O'Hartigan v. Dep't of Personnel, 118 Wash.2d 111, 117-18, 821 P.2d 44 (1991): Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 104, 937 P.2d 154 (1997).
[4] Petitioners Erickson and Sundstrom, in the appendices to their Supplemental Brief, cite a report from the Washington State Institute of Public Policy that contains examples of actual notices that have been given to the public about released offenders. These examples contain information about: alleged crimes for which the offender has not been convicted, subjective opinions about results of sexual deviancy counseling, home address of the offender, physical description of offender, other addresses that the offender is known to frequent, place of employment of the offender, and even the vehicle license number of any automobile the offender may drive. See Pet. Suppl. Br. at 14 (citing Wash. State Inst. of Public Policy, Community Notification in Washington State: 1996 Survey of Law Enforcement (Nov.1996)).
[5] See, e.g., Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995); W.P. v. Poritz, 931 F.Supp. 1199 (D.N.J. 1996), rev'd on other grounds by E.B. v. Verniero, 119 F.3d 1077 (3d Cir.1997); Doe v. Pryor, 61 F.Supp.2d 1224 (M.D.Ala.1999); Roe v. Farwell, 999 F.Supp. 174 (D.Mass.1998); Doe v. Pataki, 3 F.Supp.2d 456 (S.D.N.Y.1998); Doe v. Attorney Gen., 426 Mass. 136, 686 N.E.2d 1007, 1013 (1997); Noble v. Bd. of Parole & Post-Prison Supervision, 327 Or. 485, 964 P.2d 990 (1998); In re Risk Level Determination of C.M., 578 N.W.2d 391, 397 (Minn.Ct.App.1998).
[6] New Jersey was the first state to enact a community notification law commonly referred to as "Megan's Law". E.B. v. Verniero, 119 F.3d 1077, 1081 (3d Cir.1997).