[No. 23994-2-III.   Division Three.   February 23, 2006.]

*In the Matter of the Detention of* WILLIAM C. ENRIGHT.

708

*Anthony J. Di Tommaso, Jr.*, for appellant.

*Robert M. McKenna, Attorney General*, and *Sarah B. Sappington, Assistant*, for respondent.

¶1 SCHULTHEIS, J. — William Enright, committed as a sexually violent predator to a Special Commitment Center (SCC) at McNeil Island, sought conditional release to a less restrictive alternative. Because he has been classified as a level III offender, the residential treatment center he desires to enter would not accept him. Consequently, the State successfully moved for summary judgment denial of Mr. Enright's petition. On appeal, Mr. Enright contends the trial court denied him due process by refusing to consider a challenge to his classification as a level III offender. We conclude he was not deprived of a liberty interest without due process and affirm.

FACTS

¶2 In February 1990, Mr. Enright pleaded guilty to first degree solicitation of kidnapping. He was released from incarceration in January 1992. Within months, he was arrested for violating conditions of community placement by having contact with a minor male without written permission. In August 1992, less than one month after he was released back into the community, he molested a nine-year-old boy. He pleaded guilty to first degree child molestation in November 1992 and was sentenced to 89 months in prison. Eventually Mr. Enright was sent to the SCC. Before he was scheduled for transfer to the SCC, the End of Sentence Review Committee (ESRC) of the Department of Corrections reviewed Mr. Enright's history and psychological assess-

ments and determined that he was a level III offender. RCW 72.09.345(5) defines a level III offender as a sexual offender "whose risk assessments indicate a high risk of reoffense within the community at large."

¶3 On January 10, 2000, two days before Mr. Enright's sentence would expire, the State petitioned for his commitment as a sexually violent predator. Mr. Enright stipulated to the findings of fact, conclusions of law, and order of commitment as a sexually violent predator. Pursuant to the stipulation, signed October 8, 2001, the State agreed that after one year Mr. Enright could forego a show cause hearing and proceed directly to trial pursuant to RCW 71-.09.090(2) for a determination of whether release to a less restrictive alternative was in the best interests of him and the community.

¶4 In September 2002, Mr. Enright petitioned for release from the SCC to a less restrictive alternative. The State moved for summary judgment in October 2004, arguing that Mr. Enright had not demonstrated that he would not be likely to engage in predatory acts of sexual violence if released to a less restrictive alternative placement. In response, Mr. Enright filed a declaration by Richard Wollert, PhD, that set out his proposed transition plan, including possible housing at Breaking Free Ministries halfway house in Vancouver, Washington. The State then responded that the proposed plan did not set forth assurances of treatment and housing secure enough to protect the community. In January 2005, Mr. Enright filed a memorandum in opposition to the State's motion for summary judgment. He argued for the first time that because Breaking Free will not accept level III offenders, the question of his classification was a material issue of fact defeating summary judgment.

¶5 At the hearing held in January 2005, Mr. Enright argued that he had the right to present argument at trial that he should be classified as level II rather than level III. If not for his level III status, he asserted, he would be accepted at Breaking Free and therefore would meet all

statutory requirements for release to a less restrictive alternative placement. The State argued that a hearing on a petition for a less restrictive alternative placement was not the proper forum to address a sexually violent predator's risk assessment level. Noting that a sexual offender's risk assessment status is heavily controlled by statute, the trial court concluded that it should not substitute its judgment for what has been delegated to the ESRC and the local sheriff. Nevertheless, the court also concluded that Mr. Enright's classification as a level III offender was not arbitrary and capricious. Although the trial court was uncomfortable that Mr. Enright could be held indefinitely because the State has not made secure housing available for level III offenders, it granted summary judgment to the State. This appeal timely followed.

CHALLENGING THE RISK ASSESSMENT LEVEL

¶6 Mr. Enright challenges the summary judgment denial of his petition for conditional release to a less restrictive alternative placement. He contends he raised an issue of material fact regarding the appropriateness of his level III risk assessment, and argues that the trial court denied him due process by preventing him from challenging his risk assessment status. On review of the summary judgment, we consider all evidence and reasonable inferences in the light most favorable to Mr. Enright. *Lilly v. Lynch*, 88 Wn. App. 306, 312, 945 P.2d 727 (1997). We will find summary judgment appropriate if there are no issues of material fact and the State is entitled to judgment as a matter of law. *Id.*; *see also In re Det. of Skinner*, 122 Wn. App. 620, 626-27, 94 P.3d 981 (2004) (if the trial court finds that the requirements for conditional release to a less restrictive alternative have not been met, it must grant the State's motion for a judgment as a matter of law), *review denied*, 153 Wn.2d 1026 (2005).

¶7 Pursuant to RCW 71.09.090, a sexually violent predator may petition for conditional release to a less restrictive alternative placement. After a hearing on the petition, the

court may enter an order directing conditional release only if it finds that (1) the person will be treated by a qualified treatment provider; (2) the treatment provider has accepted responsibility to follow a specific course of treatment and to regularly report the person's progress; (3) "housing exists that is sufficiently secure to protect the community, and the person or agency providing housing to the conditionally released person has agreed in writing to accept the person"; (4) the person is willing to comply with all the requirements of the treatment provider and the court; and (5) the person is willing to comply with the Department of Corrections' supervision requirements. RCW 71.09.092. In lieu of a hearing under RCW 71.09.090, the trial court may grant summary judgment to the State if the court finds "that there is no legally sufficient evidentiary basis for a reasonable jury to find that the conditions set forth in RCW 71-.09.092 have been met." RCW 71.09.094(1).

¶8 There is no dispute that one of the requirements for conditional release was not met in this case: secured housing for Mr. Enright. He contends, however, that the sole reason he could not meet this requirement is because he was improperly assigned a level III status and that his housing preference—Breaking Free—will not accept level III offenders. His expert witness, Dr. Wollert, declared that the level III classification was based on out-of-date risk assessment principles and opined that Mr. Enright actually qualified for the level II classification. Citing this evidence, Mr. Enright contends the trial court should have found that he raised an issue of material fact regarding his status as a level III offender and consequently his ability to meet the housing requirement of RCW 71.09.092(3).

¶9 As noted by the State, however, the hearing on the petition for conditional release to a less restrictive alternative is not the proper forum to determine whether a sexually violent predator has been properly assigned a risk level classification. The classification of sex offenders according to their risk of reoffending is authorized by RCW 72-.09.345 and RCW 4.24.550. These sex offender registra-

tion and disclosure statutes reflect the legislature's intent "to require the exchange of relevant information about sexual predators among public agencies and officials and to authorize the release of necessary and relevant information about sexual predators to members of the general public." LAWS OF 1990, ch. 3, § 116; *In re Pers. Restraint of Meyer*, 142 Wn.2d 608, 610 n.1, 16 P.3d 563 (2001).

¶10 When a sex offender is scheduled for release from confinement, the ESRC (a committee established for the purpose of assigning risk levels) accesses all relevant records and information to determine the risk the offender poses to the community. RCW 72.09.345(3), (4). Offenders classified as level I are considered at low risk to reoffend, while those classified as level II are at moderate risk and level III offenders are at high risk to reoffend. RCW 72-.09.345(5). The ESRC then notifies local law enforcement agencies of the pending release of the sex offender and the ESRC's risk level classification. RCW 72.09.345(6). It is the local law enforcement agency, however, that reviews the ESRC's classification and makes the final determination of a sex offender's risk level. Former RCW 4.24.550(4) (2000). If the local law enforcement agency decides to classify an offender to a different level than the one assigned by the ESRC, it notifies the ESRC of the change and submits its reasons supporting that change. Former RCW 4.24.550(8). Depending on the risk level, the law enforcement agency then discloses to the community relevant information, such as the offender's name, address, and crime of conviction. *Meyer*, 142 Wn.2d at 612-13.

¶11 The purpose of the risk assessment level is to establish the extent of the information to be disseminated to the public regarding the released sex offender. Generally, the higher the risk, the more information that is given to the public. There is no statutory provision for notice or a hearing prior to the ESRC's and the local law enforcement agency's determinations of the offender's risk level classification. After release into the community, the offender may petition the superior court to change his classification and

relieve him from the duty to register. *Meyer*, 142 Wn.2d at 614 n.2 (citing RCW 9A.44.140(3)-(4)). Mr. Enright contends his only opportunity to challenge the classification is at the hearing on the petition for a less restrictive alternative placement because the classification prevents him from obtaining conditional release. He argues that due process requires a hearing on his level III classification because the classification denies him an important liberty interest.

¶12 The threshold question in a due process challenge is whether the challenger has been deprived by governmental action of a protected interest in life, liberty, or property. *Meyer*, 142 Wn.2d at 615; *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 143, 866 P.2d 8 (1994). A liberty interest may arise from the due process clause or from state laws. *Cashaw*, 123 Wn.2d at 144. The due process clause does not create a liberty interest here because a sexually violent predator does not have a liberty interest in being released before the court has determined that he or she is no longer likely to reoffend or that he or she is entitled to conditional release at a less restrictive alternative. *See Cashaw*, 123 Wn.2d at 144 (no liberty interest in being released prior to serving the full maximum sentence). Mr. Enright contends he is being denied a less restrictive detention because of his designation as a level III offender. But he does not show that the decision of a private housing provider constitutes governmental action establishing a deprivation of due process. *See Meyer*, 142 Wn.2d at 623. At most, the ESRC's action in classifying him as a level III offender had the incidental effect of making him less desirable to Breaking Free. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 125 S. Ct. 2796, 2809-10, 162 L. Ed. 2d 658 (2005) (no property interest in police enforcement of a restraining order).

¶13 As stated above, however, state statutes can create due process liberty interests. *Cashaw*, 123 Wn.2d at 144. "By enacting a law that places substantive limits on official decisionmaking, the State can create an expectation that the law will be followed, and this expectation can rise to the level of a protected liberty interest." *Id.* To create a liberty

interest, the state law must have " 'substantive predicates' to the exercise of discretion" and must direct the decision-maker to reach a particular outcome if the substantive predicates are present. *Id.* A statute granting a significant degree of discretion cannot create a liberty interest. *Id.* *Meyer* held that risk assessment classifications by the ESRC and local law enforcement agencies, as with parolability decisions, involve "subjective appraisals," with the ESRC and local law enforcement "assessing a myriad of imponderables." *Meyer*, 142 Wn.2d at 619. Although directed to classify as level III only those offenders determined to have a high risk of reoffense, both the ESRC and the local law enforcement agency are vested with significant discretion in making that decision. RCW 72.09.345(5); *Meyer*, 142 Wn.2d at 618. Moreover, the sex offender registration and disclosure statutes—including RCW 72.09-.345—are procedural statutes for official decisionmaking. *Meyer*, 142 Wn.2d at 619; *Cashaw*, 123 Wn.2d at 145. Consequently, they do not create liberty interests. *Meyer*, 142 Wn.2d at 619; *Cashaw*, 123 Wn.2d at 145.

¶14 Because neither the due process clause nor the sex offender registration and disclosure statutes create a substantive liberty interest in the risk assessment classification, Mr. Enright shows no deprivation of a liberty interest without due process. *Meyer*, 142 Wn.2d at 623. Accordingly, the trial court did not err in finding that he failed to satisfy the requirement of secured housing.

¶15 Further, we disagree with Mr. Enright's contention that he has no opportunity to challenge his classification as a level III offender. He argues that, unlike the offenders anticipating release from custody in *Meyer*, his status as a sexually violent predator—committed for an indeterminate period—precludes him from petitioning for relief because he may never qualify for a conditional release. *See* RCW 9A.44.140(3). However, the plain language of RCW 7.16.040 authorizes a writ of review "when an inferior tribunal, board or officer, exercising judicial func-

tions, has exceeded the jurisdiction of such tribunal, board or officer, . . . or to correct any erroneous or void proceeding, . . . and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law."

¶16 The question here is whether the ESRC and local law enforcement exercised a judicial function in establishing Mr. Enright's risk assessment level. *Raynes v. City of Leavenworth*, 118 Wn.2d 237, 244-45, 821 P.2d 1204 (1992) provides a helpful test to determine when a given action is quasi-judicial or legislative: (1) Could a court have taken the action at issue? (2) Have the courts historically performed such duties? (3) Did the action by the inferior tribunal, board, or officer involve application of existing law to past or present facts, or did it enact a new general law of prospective application? and (4) Did the action more closely resemble the ordinary business of courts, as opposed to legislators or administrators? The determination of a sex offender's risk to reoffend is historically assigned to the sentencing court and involved here the application of statutory guidelines to the past and present facts of Mr. Enright's record. *See, e.g.*, RCW 71.09.060(1) (the court or jury must determine, beyond a reasonable doubt, whether a person is a sexually violent predator by considering, in part, his or her likelihood of committing additional predatory acts if not confined). Because the act of classifying Mr. Enright as a level III offender resembles a court function, the ESRC and the law enforcement agency participated in a quasi-judicial function that may be challenged by a writ of certiorari under RCW 7.16.040.

¶17 In effect, the trial court here acted as though Mr. Enright had filed a writ of certiorari when it considered whether the ESRC and the law enforcement agency had acted in an arbitrary and capricious manner when they assigned Mr. Enright the level III status. However, because Mr. Enright did not specifically file a writ under RCW 7-.16.040 or address the substantive merits of a writ found in RCW 7.16.120, the court did not have jurisdiction to

reach a decision on his claim that the classification was not supported by the evidence.

¶18 Affirmed.

KATO, C.J., and BROWN, J., concur.

Review denied at 158 Wn.2d 1029 (2007).