Quinn-Brintnall, C.J.
The parents of Jennie Mae Osborn, a 15-year-old high school student who was raped and murdered by level III sex offender Joseph Rosenow, sued Mason County for failing to properly notify the community of the danger that Rosenow presented. The County appeals the trial court’s denial of its summary judgment motion, contending that the sex offender notification statute then in effect authorized, but did not require, notification,[1] and that in any case, it is immune from suit under the notification statute or shielded from liability by the public duty doctrine. Although the trial court did not explicitly mention the rescue doctrine in denying summary judgment, we affirm the trial court’s denial on that basis and remand for trial.
FACTS
On February 24, 2001, level III sex offender Rosenow raped and murdered Jennie Mae Osborn. Between June *818 2000, when Rosenow was released from prison, and December 2000, when he moved to Shelton, Rosenow had lived in Jennie’s neighborhood in Hoodsport, Mason County, less than a mile away from the Osborn residence. Jennie was a friend of Rosenow’s daughter, who attended Shelton High School with Jennie.
Rosenow pleaded guilty to third degree rape in 1993 and to second degree assault in 1999. In the 1993 incident, he raped a woman at knifepoint. In the 1999 incident, he choked a young woman with whom he had previously had consensual sex until she was unconscious and displayed a knife to her. When Rosenow was released from prison in June 2000, he was required to register as a sex offender and in July, the County reclassified him from a level II to a level III offender — the category of sex offender at the highest risk to reoffend.[2]
Beginning in the summer of 2000, Detective Jason Dracobly handled sex offender registration and community notification for the Mason County Sheriff’s Department. He spent only about 10 percent of his work time on those activities. Dracobly posted a sex offender notice regarding Rosenow on the County’s website but did not provide any other notification to the community. For another level III sex offender who was released in late 2000, for example, Dracobly had posted flyers, stuffed mailboxes, and notified the schools in the Shorecrest area of unincorporated Mason County.
Before Rosenow’s release, Hoodsport, Mason County resident Shannyn Wiseman, who was concerned about *819 Rosenow,[3] called the Sheriff’s Department and spoke with Dracobly. Dracobly informed Wiseman that he intended to post fliers and notify the community about Rosenow. About a month after Rosenow’s release, Wiseman learned from her neighbor that Rosenow had followed the neighbor’s 13-year-old daughter and another 12-year-old in his car while they rode their bikes. Wiseman reported this incident to Dracobly, who told her not to worry because that was “not Rosenow’s M.O.” Clerk’s Papers (CP) at 196.
Wiseman then asked Dracobly if he still intended to distribute fliers in the neighborhood, but he said he was too busy. Wiseman asked him if she and her friends could notify neighbors door-to-door, but Dracobly advised her not to because “it would be like a ‘vigilante’ group.” CP at 196.
In December 2000, Wiseman learned that Rosenow had moved to within one block of Hood Canal Grade School in Shelton, and she again called the Sheriff’s Department. But Dracobly was away, so she talked to someone else. The Sheriff’s Department posted the change of address on its website on January 9, 2001. But the Department did not provide any other notification.
Shelton High School vice principal Rick Wells’s declaration establishes that the high school had not received a sex offender notification regarding Rosenow and that Rosenow had even taken his car in for repairs at the high school’s auto shop. The high school posts sex offender notifications it receives from the Sheriff’s Department on a bulletin board.
In October 2001, eight months after Jennie’s death, the Osborns sued Rosenow, the State Department of Corrections, and the County. On February 3, 2003, the County moved for summary judgment, arguing that former RCW 4.24.550(5) and (6) (1998)[4] and the public duty doctrine barred liability. The Osborns submitted various materials *820 in opposition to the motion, including Wiseman’s declaration.
In a March 18, 2003 letter ruling, the trial court denied the County’s summary judgment motion, stating:
despite the directive of the statutes regarding immunity of liability in this case if followed pursuant to Mason County’s argument would render the entire warning mechanism meaningless. It is obvious that there is an issue regarding the actions and/or inactions of Mason County. ... It then becomes a question of fact as to whether the actions of Mason [C] ounty were appropriate under the circumstances. Thus, under the allegations by the plaintiffs in this case it is this court’s position that this matter be resolved at trial.
CP at 316-17.
A commissioner of this court granted the County’s motion for discretionary review, and we now affirm the trial court’s denial of Mason County’s summary judgment motion on other grounds.
ANALYSIS
Standard of Review
When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Wilson v. *821 Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). Like the trial court, we must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. Wilson, 98 Wn.2d at 437. Summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion. Wilson, 98 Wn.2d at 437.
“Immunity” under the Community Protection Act
The County contends that it is immune from suit under former RCW 4.24.550 of the community protection act[5] and, in particular, former RCW 4.24.550(6).[6]
Former RCW 4.24.550(6) states, “Except as may otherwise be provided by law, nothing in this section shall impose any liability upon a public official, public employee, or public agency for failing to release information authorized under this section.”[7] (Emphasis added.) Finally, under *822 former RCW 4.24.550, local law enforcement agencies are permitted to disclose some or all of the offender’s registration information “when the agency determines that disclosure of the information is relevant and necessary to protect the public and counteract the danger created by the particular offender.” In re Pers. Restraint of Meyer, 142 Wn.2d 608, 613, 16 P.3d 563 (2001).
 Statutory interpretation is a question of law subject to de novo review. State v. Beaver, 148 Wn.2d 338, 344, 60 P.3d 586 (2002); Berger v. Sonneland, 144 Wn.2d 91, 104-05, 26 P.3d 257 (2001). We interpret the statute “to best advance the legislative purpose,” State v. C.J., 148 Wn.2d 672, 685, 63 P.3d 765 (2003), and we begin our analysis with the plain meaning interpretation of the relevant statutory language in light of the underlying legislative purposes. Wash. Pub. Ports Ass’n v. Dep’t of Revenue, 148 Wn.2d 637, 645, 62 P.3d 462 (2003); Dep’t of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 11, 43 P.3d 4 (2002). We interpret the statute in its entirety, reviewing all provisions of the statute in relation to each other. In re Det. of Williams, 147 Wn.2d 476, 490, 55 P.3d 597 (2002); see also Wagg v. Estate of Dunham, 146 Wn.2d 63, 73, 42 P.3d 968 (2002). We narrowly construe provisos in and exceptions to general statutes. State v. Wanrow, 88 Wn.2d 221, 232, 559 P.2d 548 (1977); State v. Wright, 84 Wn.2d 645, 652, 529 P.2d 453 (1974). But where the statute is not ambiguous, we do not construe it. City of Seattle v. Ballsmider, 71 Wn. App. 159, 163 n.3, 856 P.2d 1113 (1993).
Here, former RCW 4.24.550(6) uses the phrase, “Except as may otherwise be provided by law.”[8] The County argues that this phrase grants it immunity, citing only a Connecticut case analyzing a similar phrase, Sanzone v. Board of
*823 Police Commissioners of City of Bridgeport, 219 Conn. 179, 592 A.2d 912 (1991), in support of its argument.
Sanzone states in part:
The plaintiffs argue that. . . the words “[e]xcept as otherwise provided by law” were intended to preserve without modification all existing law, common and statutory, including such actions for positive nuisance.
We decline to read the savings clause as broadly as the plaintiffs request; to do so would render the statute a nullity. The legislature could not have intended the general language of the introductory clause to swallow up and nullify the section’s other provisions. . . . While we strictly construe statutes purporting to limit the common law ... the principle that the legislature does not enact a meaningless statute must be controlling.
Sanzone, 219 Conn, at 191-92 (citations omitted).
We decline the County’s invitation to apply this Connecticut decision to the case before us. The plain language of former RCW 4.24.550(6), applicable here, does not grant the County immunity from suit. Where the legislature intended to grant immunity it is expressed. Another subsection of the same statute, which the parties concede does not apply in this case,[9] grants public officials immunity from lawsuits by sex offenders for classification decisions and the release of information. Former RCW 4.24.550(5) states:
An appointed or elected public official, public employee, or public agency ... is immune from civil liability for damages for any discretionary risk level classification decisions or release of relevant and necessary information, unless it is shown that the official, employee, or agency acted with gross negligence or in bad faith.
Former RCW 4.24.550 does not create a new duty to notify on the part of law enforcement. The statute provides that “nothing in [RCW 4.24.550] shall impose any liability’ (former RCW 4.24.550(6)). Even without that language, the *824 statute did not create an affirmative duty on the part of an agency to notify the public regarding sex offenders — by its own terms, “public agencies are authorized,” but not required, to release the information. Former RCW 4.24.550(1). Compare, e.g., former RCW 9.94A.155 (1996) (requiring Department of Corrections to issue written notice of release of violent offenders, sex offenders, and felony harassment offenders to, among others, victims and witnesses who testified against them).[10] Although the statute did not create a duty to notify, it also did not confer immunity from any lawsuit related to notification. The statute clearly indicates that the County may be liable as “otherwise . . . provided by law.” Former RCW 4.24.550(6). Therefore, we consider whether the County’s actions in this case might make it liable under another legal theory, the rescue doctrine.
Rescue Doctrine
The Osborns contend that the rescue doctrine provides the theory of liability “otherwise provided by law” referenced in former RCW 4.24.550 and requests that this court affirm the trial court on this ground.[11]
 We “may sustain a trial court on any correct ground, even though that ground was not considered by the trial court,” and we may consider this argument even if the trial court’s denial of summary judgment was not based on *825 the rescue doctrine. Nast v. Michels, 107 Wn.2d 300, 308, 730 P.2d 54 (1986). In deciding whether the facts the Osborns asserted support such a rescue doctrine claim, we look to two cases.
In the first case, Brown v. MacPherson’s, Inc., 86 Wn.2d 293, 545 P.2d 13 (1975), plaintiff property owners sued for damages resulting from an avalanche that occurred near Stevens Pass. The plaintiffs asserted that an avalanche expert had informed an agent of the State Real Estate Division that their cabins were in a high-risk avalanche zone and that the State agent led the avalanche expert justifiably to believe the Division would pass on the warning to the plaintiffs. The State then failed to notify plaintiffs of the avalanche danger and allegedly led the developer of the cabins to believe that no danger existed. Brown, 86 Wn.2d at 298.
Reversing the trial court’s grant of the State’s CR 12(b)(6)[12] motion to dismiss, our Supreme Court held:
One who undertakes, albeit gratuitously, to render aid to or warn a person in danger is required by our law to exercise reasonable care in his efforts, however commendable. Jay v. Walla Walla College, 53 Wn.2d 590, 595, 335 P.2d 458 (1959); French v. Chase, 48 Wn.2d 825, 830, 297 P.2d 235 (1956). If a rescuer fails to exercise such care and consequently increases the risk of harm to those he is trying to assist, he is liable for any physical damages he causes. Spaulding v. United States, 455 F.2d 222 (9th Cir. 19712); Hill v. United States Fid. & Guar. Co., 428 F.2d 112 (5th Cir. 1970); United States v. Gavagan, 280 F.2d 319 (5th Cir. 1960); Owl Drug Co. v. Crandall, 52 Ariz. 322, 80 P.2d 952 (1938); Zelenko v. Gimbel Bros., 158 Mise. 904, 287 N.Y.S. 134 (1935), aff’d, 247 App. Div. 867, 287 N.Y.S. 136 (1936); Sheridan v. Aetna Cas. & Sur. Co., 3 Wn.2d 423, 437-39, 100 P.2d 1024 (1940); Restatement (Second) of Torts § 323(a) (1965);[13] W. Prosser, Torts § 56 (4th ed. 1971). If the State’s *826 agents, acting out of concern for the safety of appellants and others similarly situated, negligently or intentionally conveyed the impression that the danger of avalanches was less than it was to Mr. MacPherson (or anyone else), causing him to refrain from action on appellants’ behalf he otherwise would have taken, the State is answerable for any damage caused by that misimpression.
Brown, 86 Wn.2d at 299-300 (emphasis added).
In the second case, Meneely v. S.R. Smith, Inc., 101 Wn. App. 845, 5 P.3d 49 (2000), review denied, 142 Wn.2d 1029 (2001), Division Three of this court relied on Brown to find that swimming pool manufacturers’ trade association owes a duty of care where it “undertakes the task of setting safety standards and fails to change those standards or issue warnings after it becomes aware of a risk posed by the standards.” Meneely, 101 Wn. App. at 848. Discussing Brown, the court stated:
The court in Brown held . . . that the plaintiffs’ allegations stated a possible cause of action for misfeasance; i.e., “the State’s agents undertook to prevent the avalanche damage by conferring with [the real estate broker], in effect to rescue [the plaintiffs] from their danger, but in the process ... negligently misled [the broker] and thus made [the plaintiffs’] situation worse. . . .”
The court. . . also held that under the facts alleged by the plaintiffs, the State could be held liable for nonfeasance; i.e., the representation of the State employee to the avalanche expert that he would take care of the matter caused the expert to refrain from warning the plaintiffs himself. In other words, the State assumed a duty to warn, upon which the expert relied, then did not perform the duty.
Meneely, 101 Wn. App. at 856-57.
*827 The Osborns’ situation here is analogous. According to Wiseman’s declaration, Dracobly told Wiseman that he would provide notification to the community, including posting fliers. Dracobly did not post fliers or notify the community as he indicated he would. Dracobly told Wiseman that he was too busy to post fliers and, significantly, prevented her from notifying the community by telling her that disseminating Rosenow’s conviction information would be vigilantism. These facts, taken in the light most favorable to the Osborns,[14] create a material issue of disputed fact whether Dracobly affirmatively undertook to render aid but then, by prohibiting Wiseman from sounding an alarm, negligently increased the risk of harm to Rosenow’s potential victims.
The County argues that the rescue doctrine does not apply because the Osborns had no contact with Dracobly or Wiseman and therefore they have not shown reliance, which is a necessary element of the rescue doctrine. But under Brown, Meneely, and the Restatement, the Osborns’ reliance is not a necessary element. For example, the Brown court upheld a claim of individual cabin owners based on a State agent (1) having led an avalanche expert to believe that he would pass on the expert’s warning and (2) having led the developer to believe erroneously that no avalanche danger existed. Brown, 86 Wn.2d at 299-300.
Here, as in Brown, all that is required for a plaintiff to assert a claim under the rescue doctrine is that an actor who, having undertaken to render aid to plaintiffs, “increase [d] the risk of harm” to the plaintiffs through his or her negligent acts. 86 Wn.2d at 299; see Restatement (Second) op Torts § 323 (1965). The Osborns have asserted facts sufficient to overcome Mason County’s summary judgment motion.
*828 Public Duty Doctrine
Finally, the County contends that the public duty doctrine bars liability because the State owed no duty to the Osborns in particular.[15]
The public duty doctrine provides that “for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (i.e., a duty to all is a duty to no one).” Bailey v. Town of Forks, 108 Wn.2d 262, 265, 737 P.2d 1257, 753 P.2d 523 (1987) (plurality opinion) (citing J&B Dev. Co. v. King County, 100 Wn.2d 299, 303, 669 P.2d 468 (1983)). Absent a duty running to the injured plaintiff from agents of the municipality, no liability may be imposed for a municipality’s failure to provide protection or services to a particular individual. Bailey, 108 Wn.2d at 266 (citing Chambers-Castanes v. King County, 100 Wn.2d 275, 285, 669 P.2d 451 (1983); J&B Dev. Co., 100 Wn.2d at 304-05).
But Washington courts have identified at least four situations in which a governmental agency acquires a special duty of care owed to a particular plaintiff or a limited class of potential plaintiffs, rather than the general duty of care owed to the public as a whole. The rescue doctrine is one of these exceptions:
(1) [W]hen the terms of a legislative enactment evidence an intent to identify and protect a particular and circumscribed class of persons (legislative intent), Halvorson v. Dahl, [89 Wn.2d 673, 676-77, 574 P.2d 1190 (1978)]; (2) where governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and the *829 plaintiff is within the class the statute intended to protect (failure to enforce), Campbell v. Bellevue, [85 Wn.2d 1, 12-13, 530 P.2d 234 (1975)]; Mason v. Bitton, [85 Wn.2d 321, 326-27, 534 P.2d 1360 (1975)]; (3) when governmental agents fail to exercise reasonable care after assuming a duty to warn or come to the aid of a particular plaintiff (rescue doctrine), Brown[, 86 Wn.2d at 299]; see also Chambers-Castanes [100 Wn.2d] at 285 n.3; or (4) where a relationship exists between the governmental agent and any reasonably foreseeable plaintiff, setting the injured plaintiff off from the general public and the plaintiff relies on explicit assurances given by the agent or assurances inherent in a duty vested in a governmental entity (special relationship), Chambers-Castanes[, 100 Wn.2d] at 286; J & B Dev. Co.[, 100 Wn.2d 299].
Bailey, 108 Wn.2d at 268. The rescue doctrine as set forth in Brown provides the necessary exception to the public duty doctrine.
We do not hold that the Osborns may sue Mason County for breaching a duty under former RCW 4.24.550. We hold only that the Osborns have asserted facts from which a trier of fact could find that Mason County’s actions affirmatively created a separate duty under the rescue doctrine. These facts, viewed in the light most favorable to the Osborns, raise the inference that Jennie or her parents would have received notice of the danger that Rosenow presented as a level III sex offender but for Dracobly’s statements to Wiseman.[16] Although we do so on grounds other than those expressed by the trial court, we affirm the trial court’s denial of summary judgment.
Affirmed.
Houghton and Hunt, JJ., concur.
Reconsideration denied September 10, 2004.
Review granted at 154 Wn.2d 1002 (2005).

 RCW 4.24.550 was amended in 2001 to require that, in the case of level III sex offenders, the county sheriff publish a sex offender community notice in a newspaper of general circulation in the offender’s area. That provision was not in effect at the time of the events of this case. See RCW 4.24.550(4); Laws or 2001, ch. 283, § 2.

 ROW 72.09.345(5) provides:
The committee shall classify as risk level I those sex offenders whose risk assessments indicate a low risk of reoffense within the community at large. The committee shall classify as risk level II those offenders whose risk assessments indicate a moderate risk of reoffense within the community at large. The committee shall classify as risk level III those offenders whose risk assessments indicate a high risk of reoffense within the community at large.

 Wiseman had learned from her friend (who had learned from Rosenow’s wife) that Rosenow had been imprisoned for committing a brutal rape and was shortly going to be released.

 Those subsections state:
(5) An appointed or elected public official, public employee, or public agency as defined in RCW 4.24.470 is immune from civil liability for damages for any *820 discretionary risk level classification decisions or release of relevant and necessary information, unless it is shown that the official, employee, or agency acted with gross negligence or in bad faith. The immunity in this section applies to risk level classification decisions and the release of relevant and necessary information regarding any individual for whom disclosure is authorized. The decision of a local law enforcement agency or official to classify an offender to a risk level other than the one assigned by the department of corrections, the department of social and health services, or the indeterminate sentence review board, or the release of any relevant and necessary information based on that different classification shall not, by itself, be considered gross negligence or bad faith. The immunity provided under this section applies to the release of relevant and necessary information to other public officials, public employees, or public agencies, and to the general public.
(6) Except as may otherwise be provided by law, nothing in this section shall impose any liability upon a public official, public employee, or public agency for failing to release information authorized under this section.
Former RCW 4.24.550. The subsections are currently codified at RCW 4.24.550(7) and (8) with some changes.

 Laws of 1990, ch. 3. See In re Pers. Restraint of Meyer, 142 Wn.2d 608, 620 n.l, 16 P.3d 563 (2001).

 Although the parties discuss former RCW 4.24.550(5) at length in their briefs, both concede that its provisions do not apply here.

 Former RCW 4.24.550 requires any person who has been found guilty of, pleaded guilty to, or found not guilty by reason of insanity of any sex offense, as defined by former RCW 9.94A.030(36) (1999), to provide his or her name, address, date and place of birth, place of employment, crime for which convicted, date and place of conviction, aliases used, and Social Security number to the sheriff in the county where the person resides or plans to reside. Former RCW 9A.44.130 (2000); Meyer, 142 Wn.2d at 612-13. The sheriff must also obtain the individual’s photograph and fingerprints. Former RCW 9A.44.130(8); Meyer, 142 Wn.2d at 613. The Department of Corrections’ end of sentence review committee (ESRC) initially assesses the danger posed to the community by the offender before release from confinement or the beginning of community custody or community placement, classifying offenders as level I for low risk of reoffense, level II for moderate risk, and level III for high risk. RCW 72.09.345(5); Meyer, 142 Wn.2d at 613. After reviewing the ESRC’s recommendation, local law enforcement agencies make the final determination of the risk level classification. Former RCW 4.24.550(4)(b); Meyer, 142 Wn.2d at 613.

 The original version of the statute read, “Except as otherwise provided by statute, nothing in this section shall impose any liability... for failing to release information as provided in subsection (2) of this section.” Former RCW 4.24.550(3) (1990) (emphasis added) (see Laws of 1990, ch. 3, § 117). The word “statute” was changed to “law” by Laws of 1997, ch. 364, § 1, although the bill’s legislative history does not illuminate the reason for the change.

 Br. of Appellant at 24; Br. of Resp’t at 29, 35-36.

 Nor does RCW 4.24.550(1) create a mandatory framework for notification — it orders the Washington association of sheriffs and police chiefs to develop a model policy for law enforcement agencies, but it does not mandate that a law enforcement agency follow any such guideline.

 The Osborns’ brief in response to the County’s motion for summary judgment briefly discusses the rescue doctrine as follows:
If a governmental or non-governmental organization chooses to act, it must do so carefully. It is well established in the common law that the voluntary assumption of a duty through affirmative conduct can give rise to liability if the undertaking is not performed with reasonable care. See, e.g., Sado v. City of Spokane, 22 Wn. App. 298, 301[, 588 P.2d 1231, review denied], 92 Wn.2d 1005 (1979); Meneely v. S.R. Smith, Inc., 101 Wn. App. 845, 856], 5 P.3d 49] (2000).
The duty existed. Reasonable minds could conclude that the duty was breached and that the breach was a proximate cause of the death of Jennie Osborn.
CP at 257.

 CR 12(b)(6) identifies as a ground for dismissal “failure to state a claim upon which relief can be granted.”

 Restatement (Second) of Torts § 323 (1965) states:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other’s *826 person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other’s reliance upon the undertaking.
(Emphasis added.)

 See Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

 At oral argument, the County's counsel stated, “Absent the [immunity provided for in the] statute, I would agree with you that we would be here arguing public duty doctrine and whether or not Ms. Wiseman’s contact with Mason County met one of the exceptions to the public duty doctrine.” Wash. State Court of Appeals oral argument, Osborn v. Mason County, No. 30120-2-II (May 21,2004), audio recording at 2 min. 3 sec. through 2 min. 22 sec., available at Clerk’s Office, Division Two.

 Our holding here does not, of course, relieve the Osborns of their task of proving that Dracobly’s actions were the proximate cause of Jennie’s death.