134 P.3d 197 (2006)
157 Wash.2d 18
John OSBORN, individually, and as the Personal Representative of Jennie Mae Osborn, Deceased, and Kandi Osborn, individually, Respondent,
v.
MASON COUNTY, a municipality, and State of Washington, Department of Corrections; Joseph Rosenow and "Jane Doe Rosenow," husband and wife, Petitioner.
No. 76101-9.
Supreme Court of Washington, En Banc.
Argued September 13, 2005.
Decided May 18, 2006.
*198 Charles Philip Edward Leitch, Michael Alexander Patterson, Lee Smart Cook et al, Seattle, for Petitioner.
Stephen Louis Bulzomi, John Louis Messina, Messina/Bulzomi, Tacoma, Kenneth Wendell Masters, Wiggins & Masters PLLC, Bainbridge Island, for Respondent.
Daniel Brian Heid, City of Auburn, Auburn, for Amicus Curiae Ass'n of Wash. Cities and Wash. State Ass'n of Municipal Attorneys.
Sara Lyle Ainsworth, Northwest Women's Law Center, Brian D. Buckley, Anthony Todaro, DLA Piper Rudnick Gray Cary US LLP, Seattle, for Amicus Curiae Northwest Women's Law Center.
*199 Dennis Hunter, Vancouver, Bertha Baranko Fitzer, Pierce County Prosecutors Office, Tacoma, for Amicus Curiae Wash. Ass'n of Prosecuting Attorneys, Wash. Ass'n of Sheriff & Police Chiefs and Wash. State Ass'n of Counties.
Debra Leigh Williams Stephens, Bryan Patrick Harnetiaux, Spokane, for Amicus Curiae Wash. State Trial Lawyers Ass'n.
SANDERS, J.
¶ 1 On February 24, 2001, registered sex offender Joseph Rosenow raped and murdered Jennie Mae Osborn. Osborn's parents sued Mason County for failing to warn them of Rosenow's presence. The superior court denied Mason County's motion for summary judgment. The Court of Appeals, Division Two, affirmed the superior court, holding Mason County had a duty to warn the Osborns of Rosenow's presence under the rescue doctrine. We hold that Mason County had no duty to warn the Osborns because they did not rely on a promise to warn and Jennie Mae Osborn was not a foreseeable victim. Accordingly, we reverse the Court of Appeals and grant Mason County's motion for summary judgment.

FACTS AND PROCEDURAL HISTORY
¶ 2 Neither party disputes the tragic facts of this case. Rosenow was a registered sex offender. In 1993, he pleaded guilty to third degree rape of a woman at knifepoint, and in 1999 he pleaded guilty to second degree assault for choking unconscious a former sexual partner. When Rosenow was released from prison in June 2000 he moved to Hoodsport, Mason County. The prison preliminarily classified Rosenow a level II sex offender, but Mason County reclassified him a level III sex offender.[1]
¶ 3 Detective Jason Dracobly handled sex offender registration and community notification for the Mason County Sheriff's Department.[2] Before Rosenow's release Shannyn Wiseman, a resident of Mason County, contacted Dracobly who said he would post fliers and otherwise notify the community of Rosenow's presence. Dracobly registered Rosenow and posted a notice identifying him as a sex offender on Mason County's website, but did not distribute fliers. Wiseman contacted Dracobly again, informing him that Rosenow had followed two minor children, reporting Rosenow's change of address, and asking whether Dracobly still intended to distribute fliers. Dracobly told her he was too busy to distribute fliers and discouraged her from doing so herself. Id. In December 2000 Rosenow moved from Hoodsport to Shelton. But on February 24, 2001, he returned to Hoodsport where he raped and murdered Osborn.
¶ 4 Osborn's parents sued Mason County for failing to warn them of Rosenow's presence. Mason County moved for summary judgment, arguing that the sex offender statute then in effect, former RCW 4.24.550 (1998), imposed no duty to warn and conferred immunity from liability for failure to warn and moreover no duty to warn existed under the public duty doctrine.[3] The trial court denied Mason County's motion for summary judgment, finding former RCW 4.24.550 imposed an implied duty to warn. The Court of Appeals granted Mason County's motion for discretionary review and affirmed the trial court's ruling on different grounds. It found no duty to warn under former RCW 4.24.550, but held Mason County might have had a duty to warn under the rescue doctrine. Osborn v. Mason County, 122 Wash.App. 823, 95 P.3d 1257 (2004). We granted Mason County's petition for review. We hold Mason County had no statutory or *200 common law duty to warn the Osborns of Rosenow's presence and remand to the trial court with directions to grant Mason County's cross-motion for summary judgment.

STANDARD OF REVIEW
¶ 5 A motion for summary judgment presents a question of law reviewed de novo. See Denaxas v. Sandstone Court of Bellevue, L.L.C., 148 Wash.2d 654, 662, 63 P.3d 125 (2003). We construe the evidence in the light most favorable to the nonmoving party, Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998), and grant summary judgment if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c).

ANALYSIS
¶ 6 This case presents a question of law: did Mason County have a duty to warn the Osborns of Rosenow's presence? Puzzlingly, the Court of Appeals denied summary judgment because "the Osborns have asserted facts from which a trier of fact could find that Mason County's actions affirmatively created a separate duty under the rescue doctrine." Osborn, 122 Wash.App. at 837, 95 P.3d 1257. But, of course, the "existence of duty is a question of law," not a question of fact. Tae Kim v. Budget Rent A Car Sys. Inc., 143 Wash.2d 190, 195, 15 P.3d 1283 (2001). And neither party disputes any fact relevant to the existence of a duty. Rather, as the Court of Appeals recognizes, these parties dispute only whether Mason County's actions "negligently increased the risk of harm to Rosenow's potential victims." Osborn, 122 Wash.App. at 835, 95 P.3d 1257. So, presumably, the Court of Appeals meant the Osborns have asserted facts sufficient for a jury to find Mason County breached a duty to warn under the rescue doctrine.

I. Mason County Had No Duty to Warn the Osborns of Rosenow's Presence
¶ 7 But the Osborns do not assert facts sufficient to show Mason County had a duty to warn them of Rosenow's presence because they do not claim they relied on Mason County's assurances. A duty exists under the rescue doctrine only if an injured party reasonably relies on the assurances of a negligent rescuer. The Court of Appeals held Mason County had a duty to warn the Osborns under the rescue doctrine because Dracobly assured Wiseman he would post fliers, failed to post fliers, and discouraged Wiseman from posting fliers. Id. In other words, it held Mason County had a duty to warn the Osborns because Wiseman relied on its assurances. But that cannot support a duty under the rescue doctrine unless the Osborns reasonably relied on Wiseman. And the Osborns fail to show such reliance. Because Mason County had no duty to warn the Osbornsunder the rescue doctrine or any other theory of liabilityit is entitled to summary judgment.

A. Mason County Had No Statutory Duty to Warn the Osborns
¶ 8 The Court of Appeals correctly rejected the superior court's conclusion former RCW 4.24.550 created an implied duty to warn of the presence of a sex offender. Clerk's Papers at 316-17. Its conclusion follows inexorably from the plain language of the statute: "Except as may otherwise be provided by law, nothing in this section shall impose any liability upon a public official, public employee, or public agency for failing to release information authorized under this section." Former RCW 4.24.550(6). Thus, former RCW 4.24.550 neither imposed a duty to warn nor conferred immunity from liability for failure to warn.

B. Mason County Had No "Take Charge" Duty to Warn the Osborns
¶ 9 Under the "special relationship" doctrine, a public entity has a duty to control persons it has authority to control and a duty to protect foreseeable victims of dangerous persons leaving its custody. See, e.g., Joyce v. Dep't of Corrs., 155 Wash.2d 306, 119 P.3d 825, 830-31 (2005). In other words, a public entity "has a duty to take reasonable precautions to protect against reasonably foreseeable dangers." Taggart v. State, 118 Wash.2d 195, 217, 822 P.2d 243 (1992).
*201 ¶ 10 Accordingly, a public entity has a "take charge" duty to control parolees, id., mental patients, Petersen v. State, 100 Wash.2d 421, 428-29, 671 P.2d 230 (1983), and others it has authority to control, to the extent it has authority to control them. See, e.g., Couch v. Dep't of Corrs., 113 Wash.App. 556, 571, 54 P.3d 197 (2002) (holding authority to control limits duty to control). And a public entity has a duty to protect foreseeable victims of criminals, mental patients, and others leaving its custody. See Petersen, 100 Wash.2d at 428-29, 671 P.2d 230. See also Doyle v. United States, 530 F.Supp. 1278, 1288 (C.D.Cal.1982) (holding "a duty to warn arises only when the potential victim is known and foreseeable"); Hoff v. Vacaville Unified Sch. Dist., 19 Cal.4th 925, 937, 80 Cal.Rptr.2d 811, 968 P.2d 522 (1998) (holding "public entities have no affirmative duty to warn of the release of an inmate with a violent history unless the inmate makes a specific threat against a specific, identifiable victim or group of victims"); Thompson v. County of Alameda, 27 Cal.3d 741, 754, 167 Cal.Rptr. 70, 614 P.2d 728 (1980) (finding "no affirmative duty to warn of the release of an inmate with a violent history who has made nonspecific threats of harm directed at nonspecific victims" (emphasis omitted)). But Mason County did not "take charge" of Rosenow because it had no authority to control him. And it had no "special relationship" duty to warn the Osborns because Jennie Mae Osborn was not a foreseeable victim of Rosenow.

C. Mason County Had No Duty to Warn the Osborns under the Rescue Doctrine
¶ 11 Nor does the rescue doctrine apply because the Osborns did not rely on Mason County's assurances. The Court of Appeals mistakenly concluded reliance "is not a necessary element" of the rescue doctrine, holding Mason County had a duty to warn because it increased Osborn's risk of injury by promising to warn, failing to warn, and discouraging a third party from warning. Osborn, 122 Wash.App. at 835, 95 P.3d 1257. On the contrary, reliance is the linchpin of the rescue doctrine.
¶ 12 Under the rescue doctrine, a public entity has a "special" duty "to exercise reasonable care after assuming a duty to warn or come to the aid of a particular plaintiff." Bailey v. Forks, 108 Wash.2d 262, 268, 737 P.2d 1257, 753 P.2d 523 (1987). That "special" duty exists because a public entity's assurances may induce reliance. "A person who voluntarily promises to perform a service for another in need has a duty to exercise reasonable care when the promise induces reliance and causes the promisee to refrain from seeking help elsewhere." Folsom, 135 Wash.2d at 676, 958 P.2d 301. See also Couch, 113 Wash.App. at 572 n. 66, 54 P.3d 197 (finding no duty under rescue doctrine without reliance). And see RESTATEMENT (SECOND) OF TORTS § 323, cmt. d (1965) ("There is no essential reason why the breach of a promise which has induced reliance and so caused harm should not be actionable in tort."). Cf. Bd. of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (holding due process protects reasonable reliance on assurances of public entity). A person may reasonably rely on explicit or implicit assurances. "Even where an offer to seek or render aid is implicit and unspoken, a duty to make good on the promise has been found by most courts if it is reasonably relied upon." Brown v. MacPherson's, Inc., 86 Wash.2d 293, 301, 545 P.2d 13 (1975). But the Osborns do not claim Mason County promised to warn them of Rosenow's presence.
¶ 13 A public entity also has a duty under the rescue doctrine when an injured party reasonably relies on a third party that "refrains from acting" as a result of the public entity's assurances. Chambers-Castanes v. King County, 100 Wash.2d 275, 286 n. 3, 669 P.2d 451 (1983). See also Brown, 86 Wash.2d at 301, 545 P.2d 13 (holding "a duty to act" is "created by reliance not by the person to whom the aid is to be rendered, but by another who, as a result of the promise, refrains from acting on that person's behalf"); Meneely v. S.R. Smith, Inc., 101 Wash.App. 845, 859-60, 5 P.3d 49 (2000) (holding trade association "voluntarily assumed the duty to warn" because "manufacturers relied upon" assurances). So, in *202 Brown, a duty existed because the injured parties reasonably relied on their broker to warn them of danger, a public entity promised a third party it would warn the injured parties of danger, and the public entity caused the broker to believe no danger existed. 86 Wash.2d at 301-02, 545 P.2d 13. And in Meneely, a duty existed because the injured parties relied on a manufacturer to warn them of danger, a trade association promulgated "industry wide safety standards," and the manufacturer relied on the safety standards. 101 Wash.App. at 857-62, 5 P.3d 49. No duty can exist under the rescue doctrine without this privity of reliance.
¶ 14 In sum, a public entity has a duty under the rescue doctrine when an injured party reasonably relies, or is in privity with a third party that reasonably relies, on its promise to aid or warn. See, e.g., Bratton v. Welp, 145 Wash.2d 572, 576-77, 39 P.3d 959 (2002); Babcock v. Mason County Fire Dist. No. 6, 144 Wash.2d 774, 778, 30 P.3d 1261 (2001) (finding no duty to aid because reliance was unreasonable); Beal v. City of Seattle, 134 Wash.2d 769, 785, 954 P.2d 237 (1998) (analyzing duty to aid under "special relationship" doctrine); Honcoop v. State, 111 Wash.2d 182, 192-93, 759 P.2d 1188 (1988) (holding duty to warn exists only if public entity makes "assurances that could give rise to justifiable reliance"). But the Osborns relied on neither Mason County nor Wiseman to warn them of Rosenow's presence. Accordingly, Mason County had no duty to warn the Osborns under the rescue doctrine.

II. This Case Does Not Implicate the Public Duty Doctrine
¶ 15 The Osborns urge us to abandon the "public duty" doctrine. But no public duty doctrine analysis is necessary because Mason County had no duty to warn the Osborns of Rosenow's presence. "We have almost universally found it unnecessary to invoke the public duty doctrine to bar a plaintiff's lawsuit." Bailey, 108 Wash.2d at 266, 737 P.2d 1257. And this case is no exception.
¶ 16 A cause of action for negligence exists only if "the defendant owes a duty of care to plaintiff." Chambers-Castanes, 100 Wash.2d at 284, 669 P.2d 451. Accordingly, under the public duty doctrine, a public entity has a duty of care when it owes a duty "to the injured plaintiff," but does not have a duty of care when it owes a duty "to the public in general." Babcock, 144 Wash.2d at 785, 30 P.3d 1261. We often paraphrase this "basic principle of negligence law" as "a duty to all is a duty to no one." Id.
¶ 17 Because a public entity is liable in tort "to the same extent as if it were a private person or corporation," former RCW 4.92.090 (1963) (state) and former 4.96.010 (1967) (municipality), the public duty doctrine does notcannotprovide immunity from liability. Rather, it is a "`focusing tool'" we use to determine whether a public entity owed a duty to a "`nebulous public'" or a particular individual. Taylor v. Stevens County, 111 Wash.2d 159, 166, 759 P.2d 447 (1998) (quoting J & B Dev. Co. v. King County, 100 Wash.2d 299, 304-05, 669 P.2d 468 (1983)). The public duty doctrine simply reminds us that a public entitylike any other defendantis liable for negligence only if it has a statutory or common law duty of care. And its "exceptions" indicate when a statutory or common law duty exists. "The question whether an exception to the public duty doctrine applies is thus another way of asking whether the State had a duty to the plaintiff." Taggart, 118 Wash.2d at 218, 822 P.2d 243. See also Bishop v. Miche, 137 Wash.2d 518, 530, 973 P.2d 465 (1999) ("Exceptions to the doctrine generally embody traditional negligence principles and may be used as focusing tools to determine whether a duty is owed."). In other words, the public duty doctrine helps us distinguish proper legal duties from mere hortatory "duties."
¶ 18 Assuredly, Mason County has a "duty" to protect its citizens in a colloquial sense, but it does not have a legal duty to prevent every foreseeable injury. See Thompson v. County of Alameda, 27 Cal.3d 741, 753, 167 Cal.Rptr. 70, 614 P.2d 728 (1980). An "action for negligence does not lie unless the defendant owes a duty of care to the plaintiff," Bailey, 108 Wash.2d at 266, *203 737 P.2d 1257, and "a broad general responsibility to the public at large rather than to individual members of the public" simply does not create a duty of care. Campbell v. City of Bellevue, 85 Wash.2d 1, 9, 530 P.2d 234 (1975). Under the rescue doctrine, both public, Brown, 86 Wash.2d at 301, 545 P.2d 13, and private, Meneely, 101 Wash.App. at 860, 5 P.3d 49, entities have a duty to warn those who reasonably rely on a promise to warn. But no duty to warn exists under the rescue doctrine without reasonable reliance on such a promise.
¶ 19 And so, the facts as presented by the Osborns cannot support a duty to warn under the rescue doctrine. They contend Mason County had a duty to warn them of Rosenow's presence under the rescue doctrine because Dracobly promised to warn the community, failed to warn the community, and discouraged Wiseman from warning the community. But no general duty to warn exists "in the absence of a known danger to a specific individual" because there is no basis on which to warn anyone. Sharpe v. Dep't of Mental Health, 292 S.C. 11, 15, 354 S.E.2d 778 (1987). See also Thompson, 27 Cal.3d at 754-55, 167 Cal.Rptr. 70, 614 P.2d 728 ("Notification to the public at large of the release of each offender who has a history of violence and who has made a generalized threat at some time during incarceration or while under supervision would, in our view, produce a cacophony of warnings that by reason of their sheer volume would add little to the effective protection of the public."); VanLuchene v. State, 244 Mont. 397, 403, 797 P.2d 932 (1990) ("The merit of issuing a warning to the general public in the instant case is equally questionable. Appellants do not set forth how their actions would have differed had respondent made a general public warning."); Mangeris v. Gordon, 94 Nev. 400, 403, 580 P.2d 481 (1978) ("In such circumstances, the defendant is impressed with a duty to warn foreseeable victims of foreseeable harm."); Melinda K. Blatt, Comment, State Liability for Injuries Inflicted by Parolees, 56 U. CIN. L. REV. 615, 635 (1987) (finding "no duty to provide a warning of the release of a dangerous prisoner to the public at large"). The Osborns do not allege that Dracobly "engaged in conduct within the scope of employment that would render" him liable for their daughter's death, and "there is no basis for imposing vicarious liability upon" Mason County. Zelig v. County of Los Angeles, 27 Cal.4th 1112, 1130-31, 119 Cal.Rptr.2d 709, 45 P.3d 1171 (2002). Mason County is not liable for failing to warn the Osborns of Rosenow's presencewith or without the public duty doctrinesimply because it had no statutory or common law duty to warn them.

CONCLUSION
¶ 20 We reverse the Court of Appeals and grant Mason County's motion for summary judgment. The Osborns fail to assert facts sufficient to show Mason County had a duty to warn them of Rosenow's presence.
Concurring: ALEXANDER, C.J., MADSEN, BRIDGE, OWENS, FAIRHURST, J.M. JOHNSON, JJ.
CHAMBERS, J. (dissenting).
¶ 21 Joseph Rosenow is a level III sex offender. When Shannyn Wiseman learned he lived in her neighborhood, she repeatedly offered to post warning flyers or take other actions to alert her neighbors. Detective Jason Dracobly, the officer in charge of sex offender registration and community notification in that area, actively encouraged her not to do so and promised he would post flyers and take other appropriate steps to warn the community. Despite the fact he had in the past warned the community of level III sex offenders, this time he merely posted a warning on the county's web site. While we cannot know if the type of warnings Wiseman would have done or Dracobly promised to do would have prevented the tragic outcome in this case, we do know that no flyers were posted, no neighbors were told, the local high school was not notified, and that Rosenow raped and murdered 15-year-old Jennie Mae Osborn.
¶ 22 The majority holds that Dracobly had no responsibility to warn the community, and thus Osborn's family has no cause of action. Because I believe that we owe one another more than that under Washington common law, I dissent.
*204 ¶ 23 By assuring Wiseman that he would post flyers, Dracobly voluntarily assumed the duty to warn the community about the presence of a dangerous sex offender. One who gratuitously undertakes to warn people of danger has a common law duty to exercise reasonable care in doing so. Brown v. MacPherson's, Inc., 86 Wash.2d 293, 299, 545 P.2d 13 (1975); PROSSER AND KEETON ON THE LAW OF TORTS § 56 (W. Page Keeton, et al. eds., 5th ed.1984).
¶ 24 The facts of Brown bear a sad similarity to those before us. In Brown, Dr. Edward LaChapelle, a noted avalanche expert, notified Tonnon, an agent of the State, that a housing development was in an area at high risk for avalanches. Id. at 298, 545 P.2d 13. Tonnon "led Dr. LaChapelle justifiably to believe that the division would deal with the matter and convey his warning" to the homeowners in the development. Id. Instead, Tonnon informed William MacPherson, a real estate broker associated with the development, that there was no risk and failed entirely to communicate the danger to the residents. Id. The predicted avalanche occurred. Id. at 298-99, 545 P.2d 13. We allowed the plaintiffs' suit to go forward. Id. at 300, 545 P.2d 13.
¶ 25 The facts before us today are substantially similar. Dracobly, an agent of the State just like Tonnon, assured Wiseman, a concerned citizen much like Dr. LaChapelle, that he would inform those in danger of the risk they faced. If anything, the State is more culpable. Not only did Dracobly fail to warn those he promised to protect, he discouraged Wiseman from doing so herself.
¶ 26 The majority attempts to distinguish Brown on the contract theory of "privity of reliance." Cf. Fortune View Condo. Ass'n v. Fortune Star Dev. Co., 151 Wash.2d 534, 90 P.3d 1062 (2004) (privity of reliance a necessary predicate for implied warranties applying to subsequent purchasers). The majority holds that the State is immunized from liability unless the injured person, or someone "in privity" with the injured person, relies on the State's promises. Majority at 201-02. I respectfully disagree with that interpretation of Brown and our case law.
¶ 27 Instead, the key holding of Brown is:
If the State's agents, acting out of concern for the safety of appellants and others similarly situated, negligently or intentionally conveyed the impression that the danger of avalanches was less than it was to Mr. MacPherson (or anyone else), causing him to refrain from action on appellants' behalf he otherwise would have taken, the State is answerable for any damage caused by that misimpression.
Brown, 86 Wash.2d at 299-300, 545 P.2d 13. The "anyone else," in context, was clearly Dr. LaChapellewho, just like Wiseman, took no further action to warn the relevant communities because Dracoblyjust like Tonnonled her to believe the State would take reasonable steps to give adequate warning. Simply put, the court in Brown held that the State would be liable if its actions deprived the plaintiffs of the opportunity to be warned by the avalanche expert who had no relationship to them at all. Id. at 300, 545 P.2d 13; RESTATEMENT (SECOND) OF TORTS § 324A(c) (1965); KEETON, ET AL., supra, § 56, at 381-82. Privity is immaterial.
¶ 28 Brown also specifically rejected the State's argument that its promise to Dr. LaChapelle that it would warn the residents could create no duty. Brown, 86 Wash.2d at 300, 545 P.2d 13. We noted with approval that in other states a duty to act has "been created by reliance not by the person to whom the aid is to be rendered, but by another who, as a result of the promise, refrains from acting on that person's behalf." Id. at 301, 545 P.2d 13 (citing Dudley v. Victor Lynn Lines, Inc., 48 N.J.Super. 457, 138 A.2d 53 (1958)).
¶ 29 Meneely v. S.R. Smith, Inc., 101 Wash.App. 845, 5 P.3d 49 (2000), is completely consistent. In Meneely, the Court of Appeals held that a trade association that promulgated voluntary safety standards to swimming pool manufactures could be liable to the ultimate user of a swimming pool who was left quadriplegic due to a dangerous condition in some swimming pools known to the association. Id. at 848, 5 P.3d 49. This was because the trade association told consumers that the type of pool was safe and appropriate for diving. Id. at 860-61, 5 P.3d *205 49. Meneely did not hold that the duty could arise only from a representation made directly to consumers. The fact that, in that case, the duty flowed in part from the representation directly to the consumer does not mean that a representation must be made directly to the consumer or victim.
¶ 30 This is a summary judgment motion. Taken in the light most favorable to the plaintiffs, the facts establish that Dracobly prevented Wiseman from warning the community that a level III sex offender lived among them. The plaintiffs have also established sufficient facts from which a jury could find Dracobly failed to exercise reasonable care. Finally, the plaintiffs have established sufficient facts from which a jury could find, but for this breach of care, Jennie Mae Osborn might still be alive. We should affirm the Court of Appeals and the trial court and remand for trial.
¶ 31 I respectfully dissent.
Concurring: C. JOHNSON, J.
NOTES
[1] Level I sex offenders are low risk reoffenders, level II are moderate risk, and level III are high risk. RCW 72.09.345(5).
[2] Former RCW 9A.44.130 (2000) required counties to record the name, address, date and place of birth, criminal convictions, dates and places of conviction, aliases, Social Security number, photograph, and fingerprints of released sex offenders.
[3] In 2000, the "state's policy" was "to authorize the release of necessary and relevant information about sexual predators to members of the general public." Laws of 1990, ch. 3, § 116. A 2001 amendment requires county sheriffs to publish a notice in a newspaper of general circulation when a level III sex offender moves to their jurisdiction. See RCW 4.24.550(4); Laws of 2001, ch. 283, § 2.