249 P.3d 630 (2011)
159 Wash.App. 357
U.S. OIL TRADING, LLC, Appellant,
v.
STATE of Washington, Office of Financial Management, and Department of Revenue, Respondent.
No. 40950-0-II.
Court of Appeals of Washington, Division 2.
January 11, 2011.
*631 Franklin G. Dinces, The Dinces Law Firm, Gig Harbor, WA, Geoffrey P. Knudsen, Attorney at Law, Seattle, WA, for Appellant.
Donald F. Cofer, Atty. Generals Ofc/Revenue Div., Peter B. Gonick, Washington Attorney General's Office, David Thomas Wendel, *632 Attorney at Law, Olympia, WA, for Respondent.
PENOYAR, C.J.
¶ 1 U.S. Oil Trading, LLC (Trading) appeals the trial court's order granting a partial motion to dismiss the tort claim Trading brought against the Washington State Office of Financial Management (OFM) and Department of Revenue (DOR). Trading argues that OFM and DOR owed a duty to Trading. We affirm.

FACTS
¶ 2 Trading brings its tort claim under the Taxpayer Protection Act of 2007 (TPA), which Washington voters approved as Initiative 960 (I-960) in 2007. Laws of 2008, ch. 1, § 19. I-960 was codified at former chapter 43.135 RCW (2008). The TPA provides that "[a]ny action by the legislature that raises taxes may be taken only if approved by two-thirds of each house of the legislature." Former RCW 43.135.035(1) (2008). OFM was charged with determining the cost of any bill introduced in the house of representatives or the senate that "raises taxes" as that term is defined in the TPA. RCW 43.135.031(1); former RCW 43.135.035(6) (2008).
¶ 3 In its complaint, Trading alleged that OFM and DOR[1] committed tortious conduct by preparing a fiscal note indicating that Senate Bill 6096 did not impact the State's revenue.[2] Trading requested $11,275,000 in damages, "the estimated present value of the future taxes Trading will have to pay as a result of Senate Bill 6096 becoming valid law." Clerk's Papers (CP) at 42. In the event that Senate Bill 6096 is not valid law, Trading requested an amount in excess of $76,000. Trading also claimed that it was entitled to a tax refund under RCW 82.32.180.[3]
¶ 4 OFM and DOR filed a CR 12(b)(6) motion to dismiss Trading's tort claim. The trial court granted the partial motion to dismiss the tort claim, finding, in an oral ruling, that "the defendants have no actionable duty toward the plaintiff, and that no private right of action was created contrary to the arguments of the plaintiff in this case." Report of Proceedings (RP) at 25. The trial court entered final judgment on the tort claim under CR 54(b). Trading petitioned for direct review. The Supreme Court transferred the case to us. We agree with the trial court's disposition of this case.

ANALYSIS

I. Standard of Review
¶ 5 We review de novo a trial court's decision on a CR 12(b)(6) motion to dismiss as a question of law. San Juan County v. No New Gas Tax, 160 Wash.2d 141, 164, 157 P.3d 831 (2007). "A trial court should grant a motion to dismiss pursuant to CR 12(b)(6) only `if it appears beyond a reasonable doubt that no facts exist that would justify recovery.'" Atchison v. Great W. Malting Co., 161 Wash.2d 372, 376, 166 P.3d 662 (2007) (quoting Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994)).

II. Duty
¶ 6 First, Trading alleges that OFM and DOR committed a tort when the agencies failed to determine that Senate Bill 6096 would raise taxes, "intentionally and negligently" breaching their duty to Trading. Appellant's Br. at 16. Trading states, "To raise a tort claim, a plaintiff must allege the existence of a duty, the breach of that duty, injury, and a causal connection between the breach and damage." Appellant's Br. at 14. Trading's complaint also alleges that (1) OFM and DOR had duties, (2) they intentionally and negligently breached their duties, (3) the failure to fulfill their duties *633 allowed the bill to be approved by simple majority vote, and (4) Trading was damaged by the OFM and DOR's failure to fulfill their duties. OFM and DOR assert that they do not owe a duty to Trading. We agree with OFM and DOR.

A. Public Duty Doctrine[4]
¶ 7 Under RCW 4.92.090, the State of Washington has waived its sovereign immunity.[5] However, "[u]nder the public duty doctrine, no liability may be imposed for a public officials negligent conduct unless it is shown that `the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (i.e., a duty to all is a duty to no one).'" Taylor v. Stevens County, 111 Wash.2d 159, 163, 759 P.2d 447 (1988) (quoting J & B Dev. Co. v. King County, 100 Wash.2d 299, 304, 669 P.2d 468 (1983), overruled on other grounds by Meaney v. Dodd, 111 Wash.2d 174, 759 P.2d 455 (1988)). A general responsibility to the public, rather than to individual members of the public, does not create a duty of care. Osborn v. Mason County, 157 Wash.2d 18, 28, 134 P.3d 197 (2006) (quoting Campbell v. City of Bellevue, 85 Wash.2d 1, 9, 530 P.2d 234 (1975)). "The policy underlying the public duty doctrine is that legislative enactments for the public welfare should not be discouraged by subjecting a governmental entity to unlimited liability." Taylor, 111 Wash.2d at 170, 759 P.2d 447.

B. Exceptions to the Public Duty Doctrine
¶ 8 There are four exceptions to the public duty doctrine: (1) legislative intent; (2) failure to enforce; (3) the rescue doctrine; and (4) a special relationship. Cummins v. Lewis County, 156 Wash.2d 844, 853 n. 7, 133 P.3d 458 (2006). If one of the exceptions applies, the governmental entity owes a duty to the plaintiff as a matter of law. Cummins, 156 Wash.2d at 853, 133 P.3d 458. Trading contends that three of the exceptionsthe legislative intent, failure to enforce, and special relationship exceptions apply. We disagree.

1. Legislative Intent Exception
¶ 9 First, Trading contends that the legislative intent exception applies, because I-960 was intended to protect "persons whose taxes would be raised." Appellant's Br. at 19. Under the legislative intent exception, governmental liability may occur when legislation "evidences a clear intent to identify and protect a particular and circumscribed class of persons." Halvorson v. Dahl, 89 Wash.2d 673, 676, 574 P.2d 1190 (1978). The statutory language must clearly express the intent to protect the identified class. Ravenscroft v. Wash. Water Power Co., 136 Wash.2d 911, 929, 969 P.2d 75 (1998). If the legislative intent exception applies, a member of the identified class may bring a tort action against the governmental entity for its violation of the statute. Ravenscroft, 136 Wash.2d at 929, 969 P.2d 75.
¶ 10 Here, the stated intent of I-960, codified at former chapter 43.135 RCW, the TPA, was "to protect taxpayers by creating a series of accountability procedures to ensure greater legislative transparency, broader public participation, and wider agreement before state government takes more of the people's money. This measure protects taxpayers and relates to tax and fee increases imposed by state government." Laws of 2008, ch. 1, § 1. Whether this overall intent was intended to benefit individual taxpayers or taxpayers as a whole is perhaps not entirely clear. However, there is a specific statement of intent in reference to the provision *634 in the initiative that requires OFM to determine the cost of any bill that raises taxes. This statement refers repeatedly to the "people." Laws of 2008, ch. 1, § 1. The statement of intent for section 2 of the TPA,[6] reads:

The people want a thorough, independent analysis of any proposed increase in taxes and fees. The people find that legislators too often do not know the costs to the taxpayers for their tax and fee increases and this fiscal analysis by the office of financial management will provide better, more accessible information. The people want a user-friendly method to track the progress of bills increasing taxes and fees, finding that transparency and openness leads to more public involvement and better understanding. The people want information on public hearings and legislators' sponsorship and voting records on bills increasing taxes and fees and want easy access to contact information of legislators so the people's voice can be heard. Section 2(5) and (6) of this act are intended to provide active, engaged citizens with the opportunity to be notified of the status of bills increasing taxes and fees.... The people want the office of financial management to fully comply with the cost projections and other requirements of section 2 on bills increasing taxes or fees before fiscal notes. Cost projections and the other information required by section 2 are critically important for the Legislature, the media, and the public to receive before fiscal notes.

Laws of 2008, ch. 1, § 1 (emphasis added). The statement of intent emphasizes that the cost projections are important for the public to receive and are intended to notify citizens of bills that increase taxes or fees. The statement of intent repeatedly refers to "the people," stressing that the purpose of the initiative was to create more transparency and public involvement. The intent of this section is to benefit "the people," not individual taxpayers. We find no legislative intent to create a duty toward Trading or other individual taxpayers in this section of I-960.

2. Failure to Enforce Exception
¶ 11 Trading also asserts that the failure to enforce exception applies. This exception applies when (1) governmental agents are responsible for enforcing statutory requirements, (2) the agents possess actual knowledge of a statutory violation but fail to take corrective action despite a statutory duty to do so, and (3) the plaintiff is within the class the statute is intended to protect. Honcoop v. State, 111 Wash.2d 182, 190, 759 P.2d 1188 (1988) (quoting Bailey v. Town of Forks, 108 Wash.2d 262, 268, 737 P.2d 1257, 753 P.2d 523 (1987)). "For the failure to enforce exception to apply, government agents must have a mandatory duty to take specific action to correct a statutory violation." Halleran v. Nu West, Inc., 123 Wash. App. 701, 714, 98 P.3d 52 (2004). We construe this exception narrowly. Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wash.2d 506, 531, 799 P.2d 250 (1990). Here, there is no specific legislative directive in the TPA for OFM or DOR to take corrective action. Rather than enforcing statutory requirements, OFM and DOR analyze and report. The failure to enforce exception simply does not apply.

3. Special Relationship Exception
¶ 12 Finally, Trading alleges that OFM and DOR committed an intentional tort, which created a special relationship between the parties. A governmental entity is liable for negligence, under the special relationship exception, when there is (1) direct contact between the public official and injured plaintiff, (2) express assurance given by the public official to the injured plaintiff, and (3) justifiable reliance by the plaintiff on such express governmental assurance. Babcock v. Mason County Fire Dist. No. 6, 144 Wash.2d 774, 786, 30 P.3d 1261 (2001) (quoting Beal v. City of Seattle, 134 Wash.2d 769, 785, 954 P.2d 237 (1998)). "It is only where a direct inquiry is made by an individual and incorrect information is clearly set forth by the *635 government, the government intends that it be relied upon and it is relied upon by the individual to his detriment, that the government may be bound." Babcock, 144 Wash.2d at 789, 30 P.3d 1261 (quoting Meaney, 111 Wash.2d at 180, 759 P.2d 455).
¶ 13 Trading concedes that it did not receive an express assurance from DOR or OFM. Thus, the second element of the special relationship exception is lacking and this basis for a finding of duty also fails.
¶ 14 None of the exceptions to the public duty doctrine apply. Accordingly, OFM and DOR owed no duty to Trading, and the trial court properly dismissed Trading's tort claims.
¶ 15 We note that Trading also argues that the TPA creates a private cause of action, OFM and DOR are not immune from liability, and that Trading's tort claim is not foreclosed by the exclusive tax refund remedy. Because we resolve this case on other grounds, we need not reach these issues.
¶ 16 Affirmed.
We concur: BRIDGEWATER and QUINN-BRINTNALL, JJ.
NOTES
[1] Trading's amended complaint alleges that "DOR and OFM jointly and severally prepared a fiscal note to Senate Bill 6096." CP at 40.
[2] Senate Bill 6096 arguably "raises taxes," or increases state tax revenue, by eliminating a business and occupation tax deduction that Trading was previously able to claim.
[3] The tax refund claim is not before us. The trial court separated the tax refund claim from the tort claim, and the refund action remains at the trial court.
[4] In 2006, the Washington State Supreme Court called the public duty doctrine a "focusing tool" used to determine whether a public entity owed a duty to a "`nebulous public' or a particular individual." Osborn v. Mason County, 157 Wash.2d 18, 27, 134 P.3d 197 (2006) (quoting Taylor v. Stevens County, 111 Wash.2d 159, 166, 759 P.2d 447 (1988)). Whether an exception to the public duty doctrine exists is another way of asking whether the State owed a duty to the plaintiff. Osborn, 157 Wash.2d at 28, 134 P.3d 197 (quoting Taggart v. State, 118 Wash.2d 195, 218, 822 P.2d 243 (1992)).
[5] "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." RCW 4.92.090.
[6] Section 2 of the TPA requires OFM to publish cost projections, information on public hearings, and legislators' sponsorship and voting records on bills increasing taxes or fees. Laws of 2008, ch. 1, § 2.